**William R. KIRKLAND, and all other persons similarly situated, Plaintiffs–Appellees,**

v.

**NATIONAL MORTGAGE NETWORK, INC., Defendant–Appellant,**

**Equity Funding Associates, Inc., Defendant,**

**David L. Braverman, Esquire, Movant–Appellant.**

No. 89–8060.

United States Court of Appeals, Eleventh Circuit.

Sept. 29, 1989.

Ted H. Clarkson, Knox and Zacks, P.C., Augusta, Ga., for defendant-appellant.

Thomas W. Tucker, Dye, Miller, Tucker & Everitt, P.A., John B. Long, Nixon, Yow, Wallter and Capers, Augusta, Ga., for plaintiffs-appellees.

Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and YOUNG,* Senior District Judge.

JOHNSON, Circuit Judge:

National Mortgage Network, Inc. ("National Mortgage") and its attorney, David L. Braverman, bring this appeal from the district court's order dismissing this action without prejudice under Fed.Rule Civ.P. 41(a)(2). The sole issue on appeal concerns the district court's previous order revoking Braverman's admission *pro hac vice* to appear before it in this case.

## I. STATEMENT OF THE CASE

The plaintiffs-appellees ("Kirkland") brought a lawsuit against National Mortgage and other defendants in 1987 raising Truth–in–Lending Act and other claims relating to a 1986 loan transaction in which Kirkland borrowed $15,000 from National Mortgage. Kirkland moved for class certification, on which a hearing was held on

---

* Hon. George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

January 14, 1988. Braverman, an attorney admitted to several state and federal bars in Pennsylvania and California, is general litigation counsel for National Mortgage. At the January 14, 1988 hearing, Ted H. Clarkson, an attorney for National Mortgage and a member of the bar of the Southern District of Georgia, made an informal oral motion for Braverman's *pro hac vice* admission, to which the court acceded.[1] Following that hearing, negotiations took place between Braverman, on behalf of National Mortgage, and Kirkland's attorney, John B. Long, regarding settlement of the case as to National Mortgage.

By February 4, 1988, it appeared that a settlement in principle had been reached, and a conference telephone call was set up on that date between Braverman, Long, and the District Judge. During the call, Braverman agreed to deposit $40,000 in settlement funds into the Registry of the Court. Although the issue was apparently not raised during the conference call,[2] Braverman maintains that Long had agreed to a so-called "joint tortfeasor release" or "*Griffin* release"[3] designed to prevent National Mortgage from being held liable in cross-claims by any co-defendants, in the event Kirkland recovered against such co-defendants. Long maintains that he did not agree to such a release and that he was unaware of how such a release could be effectuated. In any event, when it became apparent after the February conference that Kirkland was unable or unwilling to provide such a release, the settlement broke down. Without notifying the court, Braverman failed to deposit the $40,000.

Kirkland moved to enforce the settlement as he believed it had been reached at the time of the February conference. The district court held an evidentiary hearing on June 14, 1988, at the conclusion of which it announced findings which were memorialized in a written order dated June 21, 1988. The court found that a settlement in principle had been reached by the time of the February conference, that the *Griffin* release issue did not appear to be crucial at the time, and that Braverman had made an "unequivocal" commitment to deposit the $40,000. Because of the complexity of the case, however, the court concluded that no full meeting of the minds had occurred on certain aspects of the documentation of the settlement terms. The court therefore denied the motion to enforce the settlement.

At the conclusion of the settlement hearing, the court also revoked Braverman's *pro hac vice* admission, stating that it felt it could not rely upon his statements as "a respected officer of this court." The court stated in its June 21, 1988 order that "Mr. Braverman ignored the fundamental pledge that I expect of an officer of this Court—to keep his word."[4] Braverman was not afforded any notice or hearing regarding this revocation. On December 5, 1988, the court granted Kirkland's motion for voluntary dismissal without prejudice of his claims against National Mortgage. The court denied National Mortgage's motion for reconsideration and dismissal with prejudice on January 5, 1989.

## II. DISCUSSION

### A. *Jurisdiction*

 We first address whether this Court has jurisdiction to hear this appeal. The district court's order granting voluntary dismissal without prejudice under

---

1. The transcript shows that Clarkson introduced Braverman by stating: "Your Honor, if it is permissible with the court I would like to introduce David Braverman who is cocounsel in the case and I think he has a response to [the class-certification issue]." The transcript does not indicate any response from the court; however, Braverman proceeded to present arguments, make objections, and answer questions from the court, without objection from the court or anyone else.

2. No transcript was taken of this crucial conference.

3. *See Griffin v. United States*, 500 F.2d 1059, 1071–73 (3d Cir.1974).

4. The court found that Braverman had abandoned efforts to conclude the settlement following the February conference, and had failed to deposit the $40,000 in settlement funds as promised.

Rule 41(a)(2) is final and appealable by defendant National Mortgage, *see Le-Compte v. Mr. Chip, Inc.,* 528 F.2d 601, 602–03 (5th Cir.1976), and as a final judgment it incorporates and brings up for review the preceding nonfinal order disqualifying Braverman, *see Aaro, Inc. v. Daewoo International (America) Corp.,* 755 F.2d 1398, 1400 (11th Cir.1985). Kirkland argues, however, that the validity of Braverman's disqualification, the only issue raised on appeal, is now moot because the underlying case has been dismissed.

We find this appeal to present a live controversy on the basis of *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985). *Kleiner* involved attorneys who were disqualified from further representation in a class-action case due to misconduct. The merits of the case were settled after this Court heard oral argument, but this Court nevertheless found that the disqualification issue was not moot. *Kleiner* noted that

> the brand of disqualification was not lifted at the close of the proceedings. The disciplinary action and consequent disqualification may expose counsel to further sanctions by the bar and portends adverse effects upon counsel's careers and public image. The effects of disqualification will linger long after the closing of the case. The controversy

thus remains live and demands consideration.

*Id.* at 1200 n. 14.

Braverman's situation bears a strong similarity to *Kleiner.* Although the immediate impact of the revocation of his *pro hac vice* status ended with the case's dismissal, the "brand of disqualification" on grounds of dishonesty and bad faith could well hang over his name and career for years to come.[5] *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), is not to the contrary. *Koller* did not address mootness issues, but held only that an order disqualifying counsel in a civil case is not a collateral order subject to immediate appeal under 28 U.S.C.A. § 1291.[6] We therefore conclude that this Court has jurisdiction over this appeal.

### B. *Notice and Hearing*

■ The dispositive issue in this appeal is whether the district court erred in revoking Braverman's *pro hac vice* admission without notice or hearing. We have no doubt that this issue is subject to *de novo* review "as with any question of law." *See McDonald v. Hillsborough County School Board,* 821 F.2d 1563, 1564 (11th Cir.1987).[7]

■ Kirkland makes a strenuous initial argument that Braverman was never for-

---

**5.** *Kleiner* also noted that the "unique nature of a class action necessitates participation of counsel even after the settlement is approved by the court," and that the client would thus "be hampered ... by its counsel's inability to appear before the court in this case." *Id.* at 1200. The analogy to the present case is weaker on this point, although Braverman and National Mortgage point out that because the present lawsuit was dismissed without prejudice, National Mortgage could be called upon again to defend itself in the Southern District of Georgia, and might be hampered by the inability of Braverman, its general litigation counsel, to appear in the Southern District of Georgia. In any event, we read the two factors cited by *Kleiner* as constituting independently adequate grounds for finding a live controversy.

**6.** *Koller* noted in dicta that "if the client obtains an unsatisfactory judgment with substitute counsel, the disqualification ruling may be challenged on appeal of a final judgment," 472 U.S. at 435, 105 S.Ct. at 2763, which is precisely what National Mortgage has done in this case. While National Mortgage does not challenge on appeal

the merits of the dismissal without prejudice, it is clearly "unsatisfied" with the district court's final judgment insofar as it incorporates the order disqualifying its general litigation counsel. Whether that issue presents a live controversy is a question which *Koller* simply does not address. *Kleiner* therefore remains the law of this circuit, and we follow it here.

**7.** This Court has on occasion reviewed district court orders disqualifying counsel on an abuse of discretion standard. *See United States v. Dinitz,* 538 F.2d 1214, 1219 (5th Cir.1976) (*en banc*), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977) (affirming order disqualifying attorney for misconduct during trial, noting that "courts enjoy broad discretion to determine who shall practice before them and to monitor the conduct of those who do"). More recently, however, this Court has limited *Dinitz* to the context of an ongoing trial where immediate disqualification is necessary to preserve the orderly administration of justice. *See Norton v. Tallahassee Memorial Hospital,* 700 F.2d 617, 618–20 (11th Cir.1983). *Norton* held that

mally admitted *pro hac vice* according to the local court rules,[8] and that the revocation of his status should therefore be treated as a mere *denial* of *pro hac vice* admission. We find no merit to this contention. The record clearly indicates that the district court waived any strict formalities in admitting Braverman *pro hac vice*. Following his admission on January 14, 1988, Braverman in fact functioned as counsel for National Mortgage before the district court for five months without objection from anyone. Furthermore, the district court, in its June 21, 1988 order, explicitly stated that its "earlier permission allowing David L. Braverman to proceed as counsel *Pro Hac Vice* in this matter is REVOKED."

■ This issue is controlled by *In re Evans*, 524 F.2d 1004 (5th Cir.1975), and *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir.1985). *Evans* held that an attorney may not be denied *admission pro hac vice* without notice and hearing of specific grounds for such denial rising to a level which would justify disbarment. *See* 524 F.2d at 1007–08. *Evans, a fortiori*, requires notice and hearing prior to *revocation* of *pro hac vice* status. *Kleiner* held that an attorney may not be disqualified from a case, except in certain

circumstances not present here,[9] "without notice of the charge against him or an opportunity to explain." 751 F.2d at 1211.-[10]

It is true that *Evans* has been partly undermined by the Supreme Court's subsequent decision in *Leis v. Flynt*, 439 U.S. 438, 443–45, 99 S.Ct. 698, 701–02, 58 L.Ed.2d 717 (1979), which held that no Fourteenth Amendment property interest is implicated by a state court's refusal to *admit* an attorney *pro hac vice*. *Leis* did not address, however, the procedural rights of an attorney regarding *revocation* of *pro hac vice* status once it has been granted. *Leis* did observe that a property interest must be based on some legal rule or "mutually explicit understanding." *See id.* at 442, 99 S.Ct. at 701. We think it clear that admission of an attorney *pro hac vice* constitutes such an understanding, and that an attorney, once admitted *pro hac vice*, enjoys the basic procedural rights enunciated in *Kleiner*.

■ In this case, the local district court rules provide for notice and hearing prior to disqualification without any exception for *pro hac vice* counsel.[11] Indeed, Kirkland has conceded in his brief and at oral argument that an attorney who has been admitted *pro hac vice* enjoys the same basic procedural rights as do regular

---

while the factual merits of a disqualification order should be reviewed on a "clearly erroneous" standard, *see* Fed.Rule Civ.P. 52(a), legal issues should be subject to full appellate review, especially where they "present a situation susceptible to a general rule to be applied in numerous cases." *See* 700 F.2d at 619–20. The threshold procedural question raised in this appeal is clearly such an issue. *See Kleiner*, 751 F.2d at 1211 (reversing a disqualification order on threshold procedural grounds in an apparent application of *de novo* review).

8. *See* S.D.Ga. Local Rules § 4, Rule 4(a) (requiring *pro hac vice* counsel to file a certificate of good standing from the district court bar where he is regularly admitted). Braverman concedes that he did not file such a certificate.

9. *Kleiner* suggested that notice and hearing could be dispensed with where "the decision to disqualify [is] ... immediate [or] necessary 'to preserve order in the court.'" 751 F.2d at 1211 (quoting *Norton*, footnote 7 *supra*, 700 F.2d at 619). *See Dinitz*, footnote 7 *supra*, 538 F.2d at 1219–21 (upholding summary disqualification

of an attorney for obstructive misconduct during trial). This exception does not apply even remotely to this case. The conduct for which Braverman was disqualified was nondisruptive and occurred outside the courtroom months before the revocation order.

10. *Kleiner* involved attorneys who were regularly admitted members of the court's bar. *Kleiner* did not place any special emphasis on that fact, however. *See id.* at 1209–11.

11. S.D.Ga. Local Rules § 4, Rule 5(a) provides: "Any member of the bar of this Court may for good cause shown, and after an opportunity has been given him to be heard, be disbarred, suspended from practice for a definite time, reprimanded, or subjected to such other discipline as the Court may deem proper." Rule 5(e) provides: "The notice of hearing for any proceeding to be conducted under subparagraph (a) of this Rule shall include the specifications of charges and complaints against any member of the bar considered by the Court for disciplinary action, and the time by which a response thereto shall be made."

counsel.[12] We believe it would be incongruous to hold otherwise, in view of the fact that *pro hac vice* counsel are subject to the same professional responsibilities and ethical standards as regular counsel. It thus follows, on the basis of *Evans* and *Kleiner*, that the district court erred in failing to afford Braverman notice and an opportunity to respond to the charges against him.[13]

### III. CONCLUSION

For the reasons stated above, the district court's order revoking Braverman's *pro hac vice* status is VACATED.[14] Because the "brand of disqualification" is thereby lifted and the case below has been dismissed, no live issues remain in this litigation. Remand is therefore unnecessary.

**12.** We note that courts in other circuits have endorsed this principle. *See Koller v. Richardson–Merrell, Inc.,* 737 F.2d 1038, 1054 (D.C.Cir. 1984), *vacated on other grounds,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); *United States v. Cooper,* 675 F.Supp. 753, 758–59 (D.R.I. 1987); *see also Johnson v. Trueblood,* 629 F.2d 302, 303–04 (3d Cir.1980) (allowing "flexibility" regarding procedural rights of *pro hac vice* counsel, due to practical constraints, but requiring, at a minimum, notice and opportunity to respond).

**13.** Kirkland argues that Braverman received the effective equivalent of notice and hearing, in the form of the June 14, 1988 settlement hearing, on the ground that the issue whether a settlement had been consummated implicitly incorporated the issue whether Braverman was justified in failing to deposit the $40,000. We find this contention implausible. The district court disciplined Braverman despite its finding that no enforceable settlement existed, indicating that it did not view the issues as interchangeable. Braverman's alleged bad faith raises subtle factual and ethical issues concerning his state of mind which were not addressed by the limited scope of the settlement hearing. It is clear that Braverman had no meaningful notice or opportunity to defend himself.

**14.** Because we vacate the order on procedural grounds, we find it unnecessary to discuss the merits of Braverman's disqualification.