147 F.3d 1334
 11 Fla. L. Weekly Fed. C 1644
 CONSTRUCTION AGGREGATES, LTD., Plaintiff-Counter-Defendant-Appellee,
v.
FOREST COMMODITIES CORPORATION, Peeples Industries, Inc.,
Defendants-Counter-Claimants-Appellants.
 No. 97-8745.
 United States Court of Appeals,
Eleventh Circuit.
 July 31, 1998.
 
 Roy E. Paul, Timothy Higgins Edwards, Bouhan, Williams & Levy, Savannah, GA, for Defendants-Counter-Claimants-Appellants.
 Robert S. Glenn, Jr., George M. Earle, Hunter, Maclean, Exley & Dunn, P.C., Savannah, GA, for Plaintiff-Counter-Defendant-Appellee.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before EDMONDSON and BIRCH, Circuit Judges, and LAWSON*, District Judge.
 PER CURIAM:
 
 
 1
 Forest Commodities Corp. and Peeples Industries, Inc. ("FCC") appeal the district court's grant of partial summary judgment in favor of Construction Aggregates, Ltd. ("CAL") on the enforceability of a shipping agreement provision. Because the pertinent order of the district court was no final judgment for all the claims presented in the district court, we must dismiss this appeal for lack of jurisdiction.
 
 BACKGROUND
 
 2
 In 1994, CAL and FCC agreed that CAL would use FCC's ocean terminal in Savannah to unload aggregate for delivery to CAL's customers. Under the agreement, if CAL failed to ship 150,000 tons of aggregate a year through FCC's terminal, CAL would pay FCC $1.50 per ton for each ton under the 150,000 pound minimum. This provision for the "fall-short" is at the center of the parties' dispute.
 
 
 3
 In May 1995, the riverbank at FCC's terminal collapsed under the weight of the aggregate unloaded by CAL. To provide money for the repair of the facility and to allow completion of the agreement, CAL lent almost $320,000 to FCC using four promissory notes.
 
 
 4
 When FCC defaulted on the notes, CAL sued FCC. FCC made two counterclaims seeking an offset of damages or recovery: First, that CAL negligently caused the collapse of the riverbank at the Savannah facility, and second, that CAL breached the original agreement by not shipping at least 150,000 tons through the facility and, therefore, owed FCC liquidated damages--$1.50 a ton for each ton below 150,000 tons--or actual damages.[1] In November 1996, a consent order dismissed, without prejudice, FCC's first counterclaim: the negligence claim. Both parties sought partial summary judgment on the issue of whether the fall-short provision was enforceable as a liquidated damages claim. In December 1996, the district court ruled in CAL's favor that the fall-short provision was unenforceable.
 
 
 5
 The District Court entered a second consent order in July 1997. In this consent order, the parties agreed that CAL would have a judgment against FCC on the four promissory notes; and FCC, then, dismissed without prejudice FCC's second counterclaim: the "fall-short" contract claim based not on liquidated damages, but actual damages. FCC expressly reserved the right to re-file its claim for actual damages.
 
 
 6
 FCC then appealed the partial summary judgment in CAL's favor: the declaration that the liquidated damage claim was unenforceable. We noted potential jurisdictional problems and gave the parties an opportunity to provide supplemental briefs on jurisdiction.
 
 DISCUSSION
 
 7
 Under 28 U.S.C. § 1291, the courts of appeals "have jurisdiction of appeals from all final decisions of the district courts." This section is the basis for the final judgment rule, which ordinarily requires that all claims and issues in a case be resolved before appeal.[2]
 
 
 8
 The first question, then, is whether this case presents a final decision. We are guided by Mesa v. United States, 61 F.3d 20 (11th Cir.1995). In Mesa, the plaintiff's complaint set out several claims. The district court dismissed the plaintiff's claims under Counts I and II, leaving some others. See id. at 21. To appeal the dismissal of Count II, the Mesa plaintiff moved to dismiss without prejudice the remaining counts. See id. The district court granted his motion and dismissed the remaining claims without prejudice. See id. On appeal, we concluded that no appellate jurisdiction was available. See id. at 22.
 
 
 9
 Although this case involves a counterclaim instead of just a complaint, this case is not significantly different from Mesa. Like the Mesa plaintiff, FCC agreed to relinquish potentially meritorious claims to pursue an appeal, but those claims were dismissed without prejudice. FCC argues that several distinctions exist between this case and Mesa, but the distinctions are not material.
 
 
 10
 First, FCC argues that the notice of appeal in Mesa came before the voluntary dismissal of the claims. If this observation is true, it is not clear from the Mesa opinion. And, the Mesa court did not treat this circumstance as material to its judgment. In addition, the chronology would not seem to affect jurisdiction because voluntary dismissals, granted without prejudice, are not final decisions. See Ryan v. Occidental Petroleum Corp., 577 F.2d 298, 302 (5th Cir.1978)[3] (Ryan is a precedent relied upon by the Mesa court).
 
 
 11
 Second, FCC argues that--unlike Mesa, where the plaintiff dismissed his claim--this case involves a consent order where both parties agreed to dismissal. FCC and CAL, however, cannot agree to grant this court jurisdiction. See Haney v. City of Cumming, 69 F.3d 1098, 1101 n. 4 (11th Cir.1995). Furthermore, the policies underlying the Mesa decision still apply here. The second consent order expressly preserves FCC's right to refile the same claim, one seeking actual damages ("It being expressly contemplated that Defendant may commence an action in the future...."). If this court were to affirm the partial summary judgment for CAL, it is possible that FCC would re-file its second counterclaim as a suit for actual damages.[4] This act would undermine the policies of judicial efficiency, avoiding piecemeal litigation, and district court independence that are the basis of the final judgment rule. See Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981).[5]
 
 
 12
 Third, FCC argues that it makes no sense to require the parties to continue litigating a claim (that is, the second counterclaim) they say they were not required to bring in the first place. That the second counterclaim was just a permissive counterclaim is not clear.[6] But, whether FCC was, in some sense, required to file the counterclaim or not is beside the point. FCC did file a counterclaim, adding new claims to the case; and it is that real case--the one presenting multiple claims by multiple parties--at which we must look. Also, we are not requiring the parties to continue litigation. All that FCC must do to appeal the partial summary judgment is have its remaining claims dismissed with prejudice. See Morewitz v. West of England Ship Owners Mut. Protection and Indem. Ass'n, 62 F.3d 1356, 1361 (1995).
 
 
 13
 Because all of the claims in the district court have not been finally decided, FCC's appeal must fit within an exception to the finality rule for us to have jurisdiction. FCC claims that the appeal falls within the Jetco exception. See Jetco Elec. Indus., Inc. v. Gardiner, 473 F.2d 1228 (5th Cir.1973). Jetco allows an exception to the finality rule when "a series of court orders, considered together, terminate[d] the litigation as effectively as a formal order." Mesa, 61 F.3d at 21. In Jetco, the plaintiff appealed an order dismissing his claim against one of three defendants, but before the appeal was heard, his claims against the other defendants were dismissed with prejudice. See Jetco Elec. Indus., 473 F.2d at 1231.
 
 
 14
 Again, Mesa (and its ancestor Ryan ) guides our resolution of this argument. Mesa and Ryan rejected the use of the Jetco exception because, in Jetco, the plaintiff had no claims left if his appeal failed. Mesa, 61 F.3d at 22; see also Jetco Elec. Indus., 473 F.2d at 1230-31. In Mesa and Ryan, however, the plaintiff's claims were dismissed without prejudice. See Mesa, 61 F.3d at 21; Ryan, 577 F.2d at 302. If the appeal failed in Mesa or Ryan, therefore, the plaintiff could re-file other claims. For this reason, the Mesa and Ryan courts rejected the use of the Jetco exception. See Mesa, 61 F.3d at 22; Ryan, 577 F.2d at 302. FCC, if its appeal fails, still has a claim for actual damages available because the district court dismissed FCC's claim without prejudice. As in Mesa and Ryan, this remaining claim precludes the use of the Jetco exception.
 
 
 15
 We are without jurisdiction to hear this appeal.
 
 
 16
 APPEAL DISMISSED.
 
 
 
 *
 Honorable Hugh Lawson, U.S. District Judge for the Middle District of Georgia, sitting by designation
 
 
 [1]
 FCC's counterclaim and amended counterclaim do not clearly distinguish the claim for actual damages from the claim for damages under the fall-short provision. That the parties and the district court accept that FCC made a claim for actual damages is demonstrated by the second consent order, which expressly reserves FCC's claim to actual damages
 
 
 [2]
 If a party wants to appeal fewer than all the claims, the district court--for proper appellate jurisdiction--must certify, under Fed. R. Civ. Proc. 54(b), that no just reason exists for delay and expressly direct an entry of judgment. See Penton v. Pompano Constr. Co., Inc., 963 F.2d 321, 321-22 (11th Cir.1992). No rule 54(b) certification is present in this case
 For another means of making a district court order appealable even when it is not final, see 28 U.S.C. § 1292(b).
 
 
 [3]
 FCC claims that the notice of appeal in Ryan also came before the Ryan plaintiff's voluntary dismissal of the remaining claims, but this assertion is clearly contradicted by the Ryan opinion. It states: "[T]he district court granted ... Ryan's motion for a voluntary dismissal of the single substantive allegation that remained.... Hereafter Ryan filed a notice of appeal...." Ryan, 577 F.2d at 300
 
 
 [4]
 FCC's desire to keep the door open for future litigation of actual damages is clear from the second consent order: "[A]ny claim by [FCC] for breach of the Agreement through proof of actual damages caused to [FCC] rather than through reliance upon the $1.50 per ton fall-short figure referenced in the Agreement is expressly preserved."
 
 
 [5]
 The use of a consent order eliminates concerns about harassment of the other party, see Firestone Tire & Rubber Co., 449 U.S. at 374, 101 S.Ct. 669, but the remaining policies are sufficient to justify application of the final judgment rule in this case
 
 
 [6]
 Compulsory counterclaims are those that "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a). A claim arises out of the same transaction or occurrence if there is a "logical relationship" between the claims. Republic Health Corp. v. Lifemark Hosps. of Florida, Inc., 755 F.2d 1453, 1455 (11th Cir.1985). It might be that FCC's counterclaim for breach of the shipping agreement is not logically related to CAL's claim that FCC defaulted on the loan agreement and is, therefore, a permissive counterclaim. It might also be, however, that FCC's counterclaim does arise out of the same transaction or occurrence because the loan agreement says that FCC's unloading facility shall be rebuilt "so that CAL and FCC can continue to carry out the terms of the [shipping] agreement." We do not decide (because we need not) whether FCC's counterclaim was compulsory. But we point out that FCC's assertion, that it could have always asserted its counterclaim as a later independent action, might be incorrect