**STATE TREASURER OF THE STATE OF MICHIGAN, Public School Employees' Retirement System, Custodian of, et al., Plaintiffs–Appellants,**

v.

**Harold V. BARRY, Barry N.P.–500, L.P., Defendants–Appellees.**

No. 97–9177.

United States Court of Appeals, Eleventh Circuit.

Feb. 19, 1999.

Steven M. Collins, Alston D. Correll, III, Alston & Bird, Atlanta, GA, for Plaintiffs–Appellants.

J. Marbury Rainer, Parker, Hudson, Rainer & Dobbs, Atlanta, GA, for Defendants–Appellees.

Before COX, CARNES and HULL, Circuit Judges.

HULL, Circuit Judge:

Because the partial summary judgment order involved here was not a final decision, we dismiss this appeal for lack of jurisdiction. This Court's prior precedent controls this case. *Construction Aggregates, Ltd. v. Forest Commodities Corp.,* 147 F.3d 1334 (11th Cir.1998); *Mesa v. United States,* 61 F.3d 20 (11th Cir.1995).

## I. BACKGROUND

A. Cross–Motions for Partial Summary Judgment

Plaintiff, Michigan's State Treasurer, as Custodian for various State retirement funds, sued Defendants Harold Barry and a limited partnership (collectively, "Defendants") after a real estate investment deal soured. Plaintiff's complaint contained: Count I for breach of contract, seeking specific performance of

an agreement to purchase an interest in a real estate partnership; Count II for the same breach of contract, but seeking damages; and Count III for expenses of litigation, including attorneys' fees, as damages for "stubborn litigiousness" under O.C.G.A. § 13–6–11.

Defendants answered and asserted two compulsory counterclaims:[1] Count I for tortious interference with business relations, and Count II for breach of fiduciary duty.

On December 2, 1996, Plaintiff filed a motion for partial summary judgment on its claim for specific performance of the contract in Count I and on Defendants' two counterclaims. On January 13, 1997, Defendants filed a cross-motion for partial summary judgment on Plaintiff's claim for specific performance of the contract in Count I.

In an order filed May 27, 1997, the district court granted Defendants' motion for partial summary judgment on Plaintiff's claim for specific performance in Count I and denied Plaintiff's motion for partial summary judgment on that specific performance claim. The court's May 27 order also granted Plaintiff's motion for partial summary judgment on Defendants' counterclaim for tortious interference. That May 27 order left pending Plaintiff's damages claim for breach of contract in Count II, Plaintiff's claim for "stubborn litigiousness" in Count III, and Defendants' counterclaim for breach of fiduciary duty.[2]

In granting Defendants partial summary judgment on Plaintiff's claim for specific performance of the contract in Count I, the district court made a finding that Defendants had not committed an anticipatory breach so as to relieve Plaintiff of its duty to perform. This finding necessarily dealt a fatal blow also to Plaintiff's claim in Count II for damages for breach of that same contract. In turn, resolution of those contract claims in Defendants' favor would defeat Plaintiff's claim in Count III for stubborn litigiousness. However, despite this favorable finding in the May 27 order regarding the specific performance claim, there was no subsequent motion for partial summary judgment on, or motion for dismissal of, the claims in Counts II and III of Plaintiff's complaint based on that finding.

The parties also never requested that the district court issue a Rule 54(b) certificate regarding the May 27 partial summary judgment order. Fed.R.Civ.P. 54(b). Upon a Rule 54(b) request, the district court may certify that no just reason exists for delay and expressly direct the entry of final judgment. If granted, this would have allowed the parties to appeal the May 27 partial summary judgment order.[3]

B. Pretrial Order

Instead of making a Rule 54(b) request, the parties proceeded with the case. They first obtained the district court's consent to extend the due date for the pretrial order through June 23, 1997. The pretrial order was then filed on June 23, 1997.

In the pretrial order, the parties agreed that the only remaining claim to be tried was Defendants' counterclaim for breach of fiduciary duty.[4] Because a pretrial order supersedes the pleadings, the pretrial order had

---

1. During oral argument, Defendants acknowledged that they brought these counts as compulsory counterclaims.

2. The district court's May 27 order states:
   Since [plaintiff] did not substantially comply with the terms of the partnership agreement, [plaintiff] is not entitled to the relief of specific performance. Accordingly, [plaintiff's] Motion for Partial Summary Judgment on its Claim for Specific Performance is DENIED, and defendants' Motion for Partial Summary Judgment on [plaintiff's] claim for specific performance is GRANTED.
   (footnote omitted.) The parties did not move for summary judgment, and the district court did not

rule, on Counts II and III of Plaintiff's complaint.

3. Alternatively, the parties could have requested permission to seek interlocutory review under 28 U.S.C. § 1292(b), but neither party did so.

4. In the pretrial order, Plaintiff asserted that "the only remaining claim to be tried before the Court [was Defendants'] claim against Michigan for breach of fiduciary duties." (Pretrial Order, Attachment C, at 15.) Similarly, Defendants represented in the pretrial order that "[t]he only issue left to be tried [was Defendants'] counterclaim for breach of fiduciary duty." (Pretrial Order, Attachment D, at 21.)

the effect, of eliminating the remaining Counts II and III in Plaintiff's complaint.[5] Accordingly, when the district court approved and entered the pretrial order on July 14, 1997, the only claim remaining in the case was Defendants' counterclaim for breach of fiduciary duty.

## C. Dismissal, Without Prejudice, of Fiduciary Duty Counterclaim

On August 20, 1997, the parties filed a joint stipulation entitled "Stipulation of Dismissal of Fiduciary Duty Claim." The stipulation recited that it was filed under Federal Rule of Civil Procedure 41(a)(1)(ii), and that the parties agreed to dismiss without prejudice Defendants' breach of fiduciary duty counterclaim, "with each party to bear its own costs." The Clerk of Court stamped the voluntary dismissal without prejudice as follows: "Entered as dismissed pursuant to Rule 41(a)(1)(i)(ii), F.R.C.P."

The stipulation also stated "that there are no claims remaining to be tried, since all claims in this action except the fiduciary duty claim were resolved in this Court's Order of May 27, 1997." This summary of the district court's order is technically inaccurate because the order repeatedly referred to only Plaintiff's claim for specific performance and nowhere discussed Plaintiff's claim for damages in Count II or claim based on stubborn litigiousness in Count III. Nonetheless, the pretrial order had the effect of removing Counts II and III from the pleadings in the case. Thus, the August 20 stipulation did resolve the only remaining claim, which was Defendants' counterclaim for breach of fiduciary duty.

## D. Judgment

On September 19, 1997, the Clerk of Court entered a judgment which stated, in full, as follows:

This action having come before the court [name of judge] for consideration of defendant's [sic] motion for partial summary judgment, and the court having granted said motion, it is **Ordered and Adjudged** that the defendants [sic] motion for partial summary judgment be granted as to specific performance.

(Emphasis in original). The judgment covered only Plaintiff's specific performance claim in Count I. No judgment was entered on Defendants' counterclaim for tortious interference, even though the partial summary judgment order clearly granted summary judgment against Defendants on that first counterclaim. No judgment was entered on Plaintiff's claims in Counts II and III, even though the effect of the pretrial order was to remove them from the case.

## E. Notice of Appeal

On October 17, 1997, Plaintiff filed a Notice of Appeal, which recited that Plaintiff was appealing from the district court's order of May 27, 1997, and the final judgment entered on September 19, 1997.

## F. Appellate Jurisdiction Issue

A few weeks after the appeal was filed, this Court raised, *sua sponte,* the appellate jurisdiction issue. On November 10, 1997, this Court sent a letter requesting that the parties address the jurisdictional issue of "[w]hether the court's orders granting partial summary judgment are final and appealable" under 28 U.S.C. § 1291. Plaintiff filed a response to the Court's jurisdiction question on November 24, 1997. Defendants filed a response on November 28, 1997, which concurred with the position taken in Plaintiff's response.

On February 24, 1998, this Court issued an order carrying the jurisdictional issue with the case. The Court's order stated, "The parties may, but are not required to, further address the jurisdictional issue in their briefs. Specifically, the parties may want to address whether the district court's September 19, 1997, judgment is final and appealable in light of *Mesa v. United States,* 61

---

5. The pretrial order provides that its content, "including the attachments ... supersedes the pleadings which are hereby amended to conform hereto.... Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the Court, unless specifically authorized in writing by the Court." (Pretrial Order at 12.)

F.3d 20 (11th Cir.1995)." Plaintiff's brief, filed April 21, 1998, addressed the jurisdiction issue.

Shortly before oral argument, this Court notified the parties, asking them to be familiar with the recent decision in *Construction Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334 (11th Cir.1998). Much of the oral argument, heard November 5, 1998, focused on the jurisdiction issue.

## II. DISCUSSION

### A. Question Presented

This case concerns whether the district court's May 27 order granting partial summary judgment is a "final decision" appealable under 28 U.S.C. § 1291. Section 1291 provides, in relevant part: "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States...." 28 U.S.C. § 1291. This section is the basis for the final judgment rule, which ordinarily requires that all claims and issues in a case be adjudicated before appeal.

The district court's partial summary judgment order, by itself, was not a "final decision" under § 1291. That May 27 order left pending Plaintiff's claims for damages for breach of contract in Count II and for attorneys' fees and costs for "stubborn litigiousness" in Count III, as well as Defendants' counterclaim for breach of fiduciary duty.

Subsequently, the June 23 pretrial order amended the pleadings and left pending only Defendants' counterclaim for breach of fiduciary duty. Later, on August 20, the parties stipulated to a dismissal of that counterclaim without prejudice. The parties voluntarily agreed to dismissal of that counterclaim without prejudice in order to appeal the partial summary judgment order before having to try the counterclaim. After entry of the May 27 order, the parties could have asked the district court to issue a Rule 54(b) certificate, but they never did so. Instead, they prepared the pretrial order, as ordered by

the district court, and only later dismissed the counterclaim without prejudice.

Thus, the narrow question presented here is whether appellate jurisdiction over a non-final partial summary judgment order may be created by the parties' agreeing to dismiss without prejudice the remaining counterclaim, so that the parties can appeal the partial summary judgment order before having to try the remaining counterclaim. In essence, the parties argue that the August 20 dismissal without prejudice of the remaining counterclaim transformed the district court's May 27 ruling on the parties' cross-motions for partial summary judgment into a final decision of the district court, thus permitting the parties an unfettered right to an immediate appeal of the partial summary judgment order.

This question is answered in *Mesa v. United States*, 61 F.3d 20 (11th Cir.1995), and *Construction Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334 (11th Cir. 1998). In both cases, this Court recently dismissed similar appeals for lack of jurisdiction and held that appellate jurisdiction over a non-final order cannot be created by dismissing the remaining claims without prejudice. We examine each case in turn.

### B. *Mesa*

In *Mesa*, the plaintiffs brought a multiple count claim. 61 F.3d at 21.[6] The district court dismissed two of the counts. *Id.* The plaintiffs then moved to dismiss the remaining counts voluntarily so that they could appeal immediately. *Id.* The district court granted the plaintiffs' motion and dismissed the remaining counts without prejudice. *Id.* However, this Court refused to hear the appeal, holding, "[B]ecause plaintiffs never sought or received a Federal Rule of Civil Procedure 54(b) certification and, thus, never received a final decision, plaintiffs had nothing to appeal." *Id.*

The *Mesa* decision concluded that the "[r]esolution of this appeal is controlled by *Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298 (5th Cir.1978)." *Mesa*, 61 F.3d at

---

**6.** There are two *Mesa* decisions: *Mesa v. United States*, 61 F.3d 20 (11th Cir.1995); and *Mesa v. United States*, 123 F.3d 1435 (11th Cir.1997).

Only the first *Mesa* decision is relevant to the issues in this appeal.

21.[7] In *Ryan,* the district court dismissed parts of the plaintiff's complaint for failure to state a cause of action. The plaintiff sought a Rule 54(b) certification, which was granted but later vacated. The plaintiff then voluntarily dismissed his remaining claim under Rule 41(a). 577 F.2d at 300. The Court in *Mesa* agreed with the Fifth Circuit in *Ryan* that voluntary dismissal of the plaintiff's remaining claim could not be considered a "final decision" under § 1291 because a voluntary dismissal is without prejudice to the moving party filing those claims again. *Mesa,* 61 F.3d at 22.

The *Mesa* court also emphasized *Ryan*'s conclusion that "[i]n the absence of a rule 54(b) certification, the earlier dismissals were not appealable." *Mesa,* 61 F.3d at 22 (citing *Ryan,* 577 F.2d at 303). In a footnote, the *Mesa* court observed that other interim Eleventh Circuit decisions failed to discuss *Ryan* and permitted appeal following voluntary dismissals; however, the *Mesa* court then acknowledged the necessity of adhering to the older *Ryan* precedent. *Id.* at 22 n. 5.

Here, as in *Mesa,* the parties failed to seek a Rule 54(b) certification prior to appealing an order which partially disposed of the case. The order in *Mesa* granted the defendant's motion to dismiss two of the counts in the plaintiff's complaint. The order here granted a motion for partial summary judgment on Plaintiff's specific performance claim in Count I.

Similarly, the appeals in *Mesa* and in this case arrived in this Court after the dismissal without prejudice of any remaining claims. The Court in *Mesa* reasoned that no final decision had been entered, because the remaining claim, which was dismissed without prejudice, could be resurrected. *See* 61 F.3d at 22.

C. *Construction Aggregates*

This Court recently followed *Mesa* in *Construction Aggregates, Ltd. v. Forest Commodities Corp.,* 147 F.3d 1334 (11th Cir. 1998), where the plaintiff sued the defendant on several promissory notes. The defendant's two counterclaims sought an offset of damages or recovery. 147 F.3d at 1335. A consent order dismissed without prejudice the defendant's first counterclaim. *Id.* Both parties then sought partial summary judgment. *Id.* The district court ruled in the plaintiff's favor, holding unenforceable a provision upon which the defendant sought liquidated damages. *Id.*

A second consent order was subsequently entered, in which the parties agreed that the plaintiff would have a judgment against the defendant on the promissory notes. *Id.* The defendant then dismissed without prejudice its second counterclaim but expressly reserved its right to re-file. *Id.* The defendant then appealed the partial summary judgment in the plaintiff's favor on the issue of liquidated damages. *Id.*

Dismissing the appeal in *Construction Aggregates* for lack of jurisdiction, this Court held that there was no final decision from which to appeal, in light of the defendant's ability to re-file its second counterclaim, which had been dismissed without prejudice. *Id.* at 1336–37. The defendant argued that "it makes no sense to require the parties to continue litigating a claim (that is, the second counterclaim) they say they were not required to bring in the first place." *Id.* at 1337. This Court rejected that argument, stating: "[W]e are not requiring the parties to continue litigation. All that [defendant] must do to appeal the partial summary judgment is have its remaining claims dismissed with prejudice." *Id.* (citing *Morewitz v. West of England Ship Owners Mut. Protection and Indem. Ass'n,* 62 F.3d 1356, 1361 (11th Cir.1995)).

D. *Jetco*'s Implied Final Decision Exception

The parties, and the concurrence here, advocate that a dismissal without prejudice is a "good pillar to support implied final judgment under *Jetco.*" We disagree for the same reasons that this Court found the *Jetco*

---

7. As *Mesa* recognized, Fifth Circuit cases decided before October 1, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc); *Mesa,* 61 F.3d at 21 n. 2.

exception inapplicable in *Construction Aggregates* and *Mesa*.

"*Jetco* allows an exception to the finality rule when 'a series of court orders, considered together, terminate[d] the litigation as effectively as a formal order.'" *Construction Aggregates*, 147 F.3d at 1337 (quoting *Mesa*, 61 F.3d at 21); *see Jetco Elec. Indus., Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973). *Jetco* involved two orders: (1) an order granting a motion to dismiss the plaintiff-appellant's cause of action against one defendant for failure to state a cause of action and for failure to comply with the Texas long arm statute; and (2) a subsequent "agreed judgment disposing of appellants' claims against the other two defendants." *Jetco*, 473 F.2d at 1230. The *Jetco* Court concluded that the "two orders, considered together, terminated [the] litigation just as effectively as would have been the case had the district judge gone through the motions of entering a single order formally reciting the substance of the earlier two orders." *Id.* at 1231. Importantly, in *Jetco*, the two orders left nothing that could be re-filed. *See id.; Construction Aggregates*, 147 F.3d at 1337.

In *Construction Aggregates*, this Court explained that *Mesa* and *Ryan* had rejected the use of the *Jetco* exception because, in *Jetco*, the plaintiff had no claims left if his appeal failed, whereas in *Mesa* and *Ryan*, the plaintiff's claims were dismissed without prejudice. *Construction Aggregates*, 147 F.3d at 1337. Thus, if the appeal failed in *Mesa* or *Ryan*, the plaintiff could re-file other claims. *Id.*

In this case, as in *Mesa*, *Ryan*, and *Construction Aggregates*, the *Jetco* exception is inapplicable.

### E. Plaintiff's Contention

█ Plaintiff attempts to distinguish *Mesa* and *Construction Aggregates* by arguing that here, unlike in those cases, the party seeking appeal was not the same party who sought dismissal of its remaining claims below. Therefore, Plaintiff argues, it had no control of the manner in which the dismissal of the counterclaim took place, either with or without prejudice. This argument fails, however, because Plaintiff consented to the dismissal without prejudice of Defendants' counterclaims. Thus, this case presents the same facts as *Construction Aggregates*, where both parties consented to a dismissal without prejudice of all remaining claims in an attempt to confer jurisdiction and create a right to immediate appeal of an otherwise non-final order. *Id.* at 1336.

In *Construction Aggregates*, as here, this Court noted the potential jurisdiction problem and offered the parties an opportunity to brief the issue. *Id.* at 1336. No Rule 54(b) certification is present in either case. *Id.* at 1336 n. 2. In both cases, the parties agreed to dismiss without prejudice potentially meritorious claims so that earlier non-final orders could be appealed.

█ Moreover, it is well settled in this Circuit that parties to a suit cannot agree to grant this Court appellate jurisdiction. *Construction Aggregates*, 147 F.3d at 1336 (citing *Haney v. City of Cumming*, 69 F.3d 1098, 1101 n. 4 (11th Cir.1995)). The teaching of *Construction Aggregates*, *Mesa*, and *Ryan* is that voluntary dismissals, granted without prejudice, are not final decisions themselves and also do not transform an earlier partial dismissal or partial summary judgment order into a final decision. Here, as in *Construction Aggregates*, it is possible that the claim dismissed without prejudice will be re-filed. Our precedent guides our conclusion that exercising jurisdiction here would undermine the policies of judicial efficiency, avoiding piecemeal litigation, and district court independence that are the basis of the final judgment rule." *Construction Aggregates*, 147 F.3d at 1336.[8]

---

8. This is not a case where the parties have during the appeal renounced their ability to proceed on their remaining claims after the appeal is decided. *See Scarbrough v. Perez*, 870 F.2d 1079, 1082 (6th Cir.1989) (permitting appeal to proceed after counsel abandoned claims at oral argument); *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir.

1991) (permitting appeal to proceed when claims were renounced several months after the appeal was filed).

During oral argument, Plaintiff represented for the first time that Defendants would agree to renounce their remaining counterclaim, but only if Defendants were to prevail on appeal regard-

## F. *Ryan*'s Rule

The concurrence questions the wisdom of *Ryan*'s rule and invites en banc reconsideration of this Circuit's longstanding precedent, which necessarily means overruling *Mesa* and *Construction Aggregates*. The invitation should be declined for several reasons.

First, *Ryan*'s rule is sound, consistent with § 1291, which provides for appellate jurisdiction over only a "final decision," and is followed by two other circuits. *Chappelle v. Beacon Communications Corp.*, 84 F.3d 652 (2d Cir.1996); *Cook v. Rocky Mountain Bank Note Co.*, 974 F.2d 147 (10th Cir.1992).

Second, repealing *Ryan*'s rule significantly erodes Rule 54(b). The district court, *sua sponte* or on motion, could have certified that there was no reason for delay and directed the entry of final judgment on Plaintiff's complaint and Defendants' counterclaim for tortious interference. Although another counterclaim remained pending, the parties then would be able to appeal immediately the district court's partial summary judgment order. Rule 54(b) allows the district court to control its docket and to make an independent determination whether an exception to the final decision rule is warranted in an individual case under appropriate circumstances.

The parties never requested a Rule 54(b) certificate so the concurrence can only speculate that it would not have been granted. But what is not conjecture is that abrogation of *Ryan*'s rule will subvert Rule 54(b) and result in the parties', not the trial court's, controlling what interim orders are appealed and when.[9] For example, as the concurrence acknowledges, one countervailing concern is "the specter of repeated appeals by litigants who dismiss claims in order to appeal and then resurrect them on remand in another action." The concurrence argues that litigants will not necessarily take that path, that *Ryan*'s rule sweeps too broadly, and that *Ryan*'s rule is bad policy. These arguments are similar to the policy arguments that have already been made, considered, and rejected in the enactment of § 1291 and Rule 54(b), which represent policy determinations that appellate jurisdiction shall be over only a final decision and that whether to allow an interim appeal is best decided by the trial court.

Third, *Ryan*'s rule is not based on a mistake of law but on a proper interpretation of § 1291. The concurrence states that a final decision is one that "ends the litigation on the merits" and "leaves nothing for the court to do but execute the judgment." Although the court may have nothing further to do when a stipulation of dismissal without prejudice is filed, the litigation has not been terminated on the merits because the stipulation is not an adverse final ruling to either party. Instead, a stipulation of dismissal without prejudice filed by the parties does just the opposite—it leaves the dismissed claim for another day.

The two cases cited by the concurrence for the proposition that *Ryan* rests on a mistake of law, *Kirkland v. National Mortgage Network, Inc.*, 884 F.2d 1367 (11th Cir.1989), and *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601 (5th Cir.1976), involved dismissals without prejudice granted by the court upon motion of the plaintiffs under Rule 41(a)(2). In contrast, this case addresses a stipulation of dismissal without prejudice by the parties under Rule 41(a)(1). In *Kirkland*, the defendant did not consent to the plaintiff's motion for dismissal without prejudice, and in fact moved for reconsideration and for dismissal with prejudice. 884 F.2d at 1369. The *Kirkland* Court's statement that a "voluntary dismissal without prejudice under Rule 41(a)(2) is final and appealable by [the defendant]," relied entirely on *LeCompte*. 884 F.2d at 1369–70. Specifically, the *LeCompte* Court reasoned that ordinarily a plaintiff cannot appeal from a Rule 41(a)(2) dismissal, be-

---

ing Plaintiff's breach of contract claims. This conditional renunciation does not affect our analysis because basing appellate jurisdiction on it also would undermine the purposes of *Ryan*'s rule.

9. The Tenth Circuit has agreed with *Ryan*'s rule, finding that a plaintiff who seeks voluntary dismissal of his remaining claims after suffering an adverse ruling "has attempted to subvert the requirements of Rule 54(b)." *Cook v. Rocky Mountain Bank Note Co.*, 974 F.2d 147, 148 (10th Cir.1992).

cause dismissal on its own motion "does not qualify as an involuntary adverse judgment so far as the plaintiff is concerned." 528 F.2d at 603. Nevertheless, according to *LeCompte,* and as applied by *Kirkland,* a defendant who opposes the dismissal has suffered an adverse final judgment and may appeal. The reasoning of *Kirkland* and *LeCompte* does not extend to a stipulation of dismissal without prejudice under Rule 41(a)(1), where all parties have consented. In such a dismissal, there has been no involuntary adverse judgment against any party, and therefore there has been no final appealable order. Indeed, unlike Rule 41(a)(2) which requires an order of court, Rule 41(a)(1) states that upon filing of a stipulation signed by all parties, no order of court is necessary. Fed. R.Civ.P. 41.

*LeCompte* itself, while permitting a plaintiff to appeal from its own motion to dismiss under Rule 41(a)(2), is limited to a subset of Rule 41(a)(2) dismissals. Where the district court placed stringent conditions on the plaintiff's ability to re-file its dismissed claims, the Court in *LeCompte* reasoned the dismissals were better treated as dismissals with prejudice for purposes of determining appealability. 528 F.2d at 603. The dismissal without prejudice here under Rule 41(a)(1), on consent and without condition, clearly is beyond the scope of *LeCompte.* This is not a case where the party seeking appeal opposed a dismissal without prejudice under Rule 41(a)(2). Thus, we need not decide the wisdom of *Ryan* 's rule in those circumstances.[10]

As the concurrence astutely points out, "part of the conceptual difficulty here and elsewhere may arise from the fact that Rule 41 is not meant for the use the parties in this case and others like it have put it: the rule speaks of voluntary dismissal of 'an action,' not a claim. Fed.R.Civ.P. 41(a)(1)." This reinforces our view that the proper way to seek appeal here was to obtain a Rule 54(b) certificate and not to craft appellate jurisdiction through a Rule 41(a)(1) dismissal without prejudice.

Fourth, we disagree with the concurrence's contention that *Ryan* 's rule encourages pointless district court litigation. Instead, if a Rule 54(b) certificate is denied, *Ryan* 's rule forces litigants to make hard choices and seriously evaluate their cases. The parties must assess the likelihood of a reversal of the adjudicated claims on appeal versus the likelihood of success on the remaining claims at trial. While some claims in lawsuits are close, many are not. Litigants often have to make much more difficult choices in the course of complex litigation. In order to appeal a court's rulings on some claims, a party may settle the remaining claims in some fashion and dismiss them with prejudice.[11] Such a settlement might even incorporate a high or low amount on the remaining claims dismissed with prejudice, contingent upon the outcome of the appeal. As the concurrence notes, perhaps the remaining claims are not winners on their merits, but only offered other tactical advantages. A party seeking an appeal either has to give up that tactical advantage to gain the benefit of finality or has to convince the other party to do so. In fact, the options of resolving the dilemma faced by the parties are endless and only limited by the settlement creativity of the parties.

Fifth, *Ryan* 's rule does not permanently deny an appeal, as the concurrence asserts,

---

**10.** *Mesa, Construction Aggregates,* and this case involve an appellant (1) who suffered an adverse non-final decision, (2) who subsequently either requested dismissal without prejudice under Rule 41(a)(2), or stipulated to dismissal without prejudice under Rule 41(a)(1), of the remaining claims. However, none of these cases involves a situation where the party appealing an adverse ruling opposed the subsequent dismissal without prejudice of the other party's remaining claims.

Other circuits also apply *Ryan* 's rule where the appellant suffers an adverse non-final decision and subsequently moves to dismiss the ap-

pellant's remaining claims without prejudice. *Cook v. Rocky Mountain Bank Note Co.,* 974 F.2d 147, 148 (10th Cir.1992); *Chappelle v. Beacon Communications Corp.,* 84 F.3d 652, 652, 654 (2d Cir.1996).

**11.** Dismissing a single, remaining claim with prejudice for the purpose of making final a prior adverse ruling on a separate and distinct claim is different from dismissing an entire complaint with prejudice which leaves no case or controversy to appeal. *See Druhan v. American Mutual Life,* 166 F.3d 1324 (11th Cir.1999).

in circumstances like this case. Instead, what denies a party an appeal is the strategic choice an appellant makes in attempting to craft appellate jurisdiction by dismissing, or agreeing to the opposing party's dismissing, a remaining claim without prejudice in order to appeal an adverse non-final decision over other claims. When such an attempt to craft jurisdiction fails, the case is returned to the district court and the parties may seek to reopen the case and to reinstate the claim dismissed without prejudice. The district court may deny such a request to reopen. However, the parties may account for that risk before attempting to craft appellate jurisdiction. In this case, the parties' attempt was made in the face of *Mesa* and simply represents one of many strategic and calculated decisions in litigation. As the concurrence concedes, "this circuit's bright-line rule fosters predictability."

Lastly, this Circuit has followed *Ryan*'s rule for almost twenty-five years. Any procedural rule will engender policy arguments and the final decision rule is no exception. The final decision rule is well known and longstanding. It is clear, easy to follow, and promotes judicial efficiency, avoiding piecemeal appeals. Most importantly, the rule as it stands today is consistent with Rule 54(b), is faithful to the statutory language and policies underlying § 1291, and allows the district courts to retain control of their dockets. It is unwise to expand the *Jetco* "implied final judgment rule," as the concurrence styles it, or the *Jetco* exception, as *Construction Aggregates* calls it, to a stipulation of dismissal without prejudice under Rule 41(a)(1) filed by all parties after the entry of a pretrial order.

1. While the merits are not at issue here, they are worth a brief description if only to point out that this permanently barred appeal is not meritless. The Treasurer and Barry were two of several partners in a real estate partnership whose sole asset was an office building. Michigan held the lion's share of the interest in the partnership and had the right to certain preferential treatment. In the early 1990s, the building's value had declined such that the interests of the partners other than Michigan (given Michigan's preferences under the partnership agreement) were worthless. To protect its investment, Michigan sought to exercise its right to purchase, on demand, the other partners' interests. Barry alone balked at the sale because it would have brought

## III. CONCLUSION

This case is controlled by *Construction Aggregates, Mesa*, and *Ryan*. Thus, we DISMISS this appeal for lack of jurisdiction.

COX, Circuit Judge, specially concurring:

I agree with the majority that under *Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298, 301–02 (5th Cir.1978), and its progeny this court lacks appellate jurisdiction over this appeal because the parties voluntarily dismissed pending claims without prejudice. I write separately, however, to suggest that the jurisdictional issue presented in this case needs rethinking. *Ryan*'s rule—which permanently strips some good-faith litigants of their right to appeal—is legally unsound and disserves important policies.

### I. Background

The plaintiff here, Michigan's State Treasurer, sued Harold Barry and a limited partnership (collectively Barry) after a real estate investment deal soured.[1] The complaint contained two claims in three counts: Count I alleged breach of contract and sought specific performance of an agreement to purchase an interest in a real-estate partnership; Count II realleged the same breach of contract, but sought damages; and Count III sought attorney fees under O.C.G.A. § 13–6–11 as damages for "stubborn litigiousness."[2] Barry answered and asserted two counterclaims. The first was tortious interference with business relations. The second, a breach-of-fiduciary-duty claim, rested on the possibility that the State Treasurer, by pre-

him adverse tax consequences. Michigan sued Barry to force conveyance of the interest; the district court granted summary judgment for Barry because Michigan had failed to tender the $1 purchase price and because, according to the district court, Barry had not repudiated the agreement by refusing to convey his interest.

2. "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant ... has been stubbornly litigious ... the jury may allow them." O.C.G.A. § 13–6–11 (Michie 1982).

vailing on the claim asserted in Count I, would exercise partnership-agreement rights to Barry's harm.

The case proceeded to motions for summary judgment. The district court granted summary judgment against the State Treasurer on Count I and against Barry on the tortious-interference claim. What was left, therefore, was the State Treasurer's Count II breach-of-contract claim for damages, the State Treasurer's "stubborn litigiousness" claim for attorney fees, and Barry's breach-of-fiduciary-duty claim. The "stubborn litigiousness" claim was not mentioned in the pretrial order, and was thus abandoned. Count II may have been implicitly disposed of in the summary judgment order, since its claim concerned the same breach of contract as Count I; in any event, Count II was omitted from the pretrial order as well, and it too was thus abandoned.

The parties then stipulated to dismiss the breach-of-fiduciary-duty claim without prejudice under Fed.R.Civ.P. 41(a)(1)(ii). Dismissing was quite understandable—the claim's success was tied to the merits of the claims that the court disposed of on summary judgment. Dismissing *without prejudice* was also a reasonable strategy, because a reversal or vacatur on appeal would revive hopes of success on the claim. The clerk endorsed the voluntary dismissal, entered judgment, and closed the case.[3] The State Treasurer filed a timely notice of appeal. This court has sua sponte concluded that it lacks jurisdiction over the appeal.

## II. *Issue*

Broadly, the issue is whether there has been a "final decision" such that 28 U.S.C. § 1291 confers appellate jurisdiction. There is not a single judgment here that disposes of all claims. Nonetheless, under still-valid former Fifth Circuit law, a series of orders disposing of every claim can together equate to a final judgment. *See Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1231 (5th Cir.1973); *see also Ryan v. Occi-*

dental Petroleum Corp., 577 F.2d 298, 301 (5th Cir.1978) (asking, based on *Jetco,* whether a voluntary dismissal qualifies as an order disposing of part of an action). The only claim that the judgment here does not dispose of (or that was not abandoned) is the one that was voluntarily dismissed. Hence, the narrow issue is whether the voluntary dismissal without prejudice of that claim is, like the judgment based on a summary judgment order, a good pillar to support implied final judgment under *Jetco.*

Under this circuit's precedent, the answer is no. "[V]oluntary dismissal of [the plaintiff's] last substantive allegation ... cannot be regarded as terminating the litigation between these parties." *Ryan,* 577 F.2d at 301–02. *Ryan* implies two reasons that the voluntary dismissal without prejudice is not final. The first is a little puzzling. Parties who voluntarily dismiss without prejudice, *Ryan* reasons, cannot ordinarily appeal because they have not suffered an adverse ruling; therefore, the voluntary dismissal is not final. Put differently, according to the *Ryan* court the ordinary basis of appellate jurisdiction is final judgment, and if the plaintiff cannot appeal—even for a reason unrelated to finality—then the judgment must not be final. *Ryan*'s second reason is that a voluntary dismissal without prejudice suggests that the fight goes on. There is always the possibility that the plaintiff will refile the same claim in the same court, thus generating a future appeal. *Mesa v. United States,* 61 F.3d 20 (11th Cir.1995), and its offspring *Construction Aggregates, Ltd. v. Forest Commodities Corp.,* 147 F.3d 1334 (11th Cir. 1998), march down *Ryan*'s path and add that a plaintiff's ability to refile the dismissed claim promotes piecemeal appeals and judicial inefficiency.

## III. *Discussion*

The jurisdictional issue addressed in *Ryan* needs revisiting because it is wrongly decided. A current circuit split illustrates the

---

**3.** The judgment oddly mentions only Barry's motion for summary judgment; it does not mention the summary judgment against Barry on its first counterclaim. This appears to be a mere clerical error, however, and the summary judgment order is clear—albeit in a footnote—that the district court granted summary judgment against Barry on its first counterclaim.

debatability of *Ryan*'s rule.[4] *Ryan* remains good Fifth Circuit law, and the Second and Tenth Circuits apparently follow *Ryan*'s rule as strictly as this circuit has in *Mesa*.[5] On the other hand, the Sixth and Eighth Circuits have rejected the rule, and the First Circuit has done so implicitly.[6] The Seventh and Ninth Circuits have compromised with a subjective approach: there is jurisdiction only if the parties did not intend to manipulate the system.[7] The Third Circuit also appears to endorse a case-by-case approach; it concluded in one case that jurisdiction existed, but only because the claims that were voluntarily dismissed without prejudice would be time-barred in the future, anyway.[8] For the following reasons, the Sixth, Eighth, and First Circuits stand on firmer ground.

### A. Ryan *rests on a mistake of law.*

First, a Rule 41 voluntary dismissal without prejudice *is* a final decision. A "final decision" under 28 U.S.C. § 1291 is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). A voluntary dismissal, even without prejudice, fits the definition—the district court's job is finished *in that action.* Pre and post–*Ryan* precedent so holds when the plaintiff dismisses the entire action. *See Kirkland v. National Mortgage Network, Inc.*, 884 F.2d 1367, 1369–70 (11th Cir.1989) ("The district court's order granting voluntary dismissal without prejudice under Rule 41(a)(2) is final and appealable by defendant. . . ."); *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 602–03 (5th Cir.1976) ("Where the trial court allows the plaintiff to dismiss his action without prejudice, the judgment, of course, qualifies as a final judgment for purposes of appeal.") (quoting 5 *Moore's Federal Practice* ¶ 41.05[3], at 1068 (2d ed.1975); *accord* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2376 (2d ed. 1995 & 1998 Supp.)). It is puzzling why a voluntary dismissal of an action without prejudice should be final, while such a dismissal that removes one claim, while others are disposed of otherwise, is not final.

4. Incidentally, this circuit suffers from an internal conflict. *See* Rebecca A. Cochran, *Gaining Appellate Review by "Manufacturing" a Final Judgment Through Voluntary Dismissal of Peripheral Claims*, 48 Mercer L.Rev. 979, 984 (1997). In *Studstill v. Borg Warner Leasing*, 806 F.2d 1005, 1008 (11th Cir.1986), the court concluded that the plaintiff's voluntary dismissal without prejudice of the claims that remained after summary judgment created a final judgment. *See id.* ("After the summary judgment the plaintiff had two choices. She could have continued to litigate the Title VII claim, and had an ultimate appeal of all rulings, or she could have abandoned the Title VII claim in exchange for the right to an immediate appeal of the ruling on the tort claim."); *see also Black v. Broward Employment & Training Admin.*, 846 F.2d 1311, 1312 (11th Cir.1988) (following *Studstill*); *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 194 (5th Cir.1980) (voluntary dismissal without prejudice does not prevent review of other rulings).

5. *See Chappelle v. Beacon Communications Corp.*, 84 F.3d 652, 654 (2d Cir.1996); *Cook v. Rocky Mountain Bank Note Co.*, 974 F.2d 147, 148 (10th Cir.1992).

6. *See J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1250 (1st Cir.), *cert. denied*, 519 U.S. 823, 117 S.Ct. 81, 136 L.Ed.2d 39 (1996); *Chrysler Motors Corp. v.*

*Thomas Auto Co.*, 939 F.2d 538, 540 (8th Cir. 1991); *Hicks v. NLO, Inc.*, 825 F.2d 118, 120 (6th Cir.1987).

7. *Compare Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1075 (9th Cir.1994) (refusing jurisdiction because parties' agreement to dismiss showed that they contemplated further litigation of dismissed claims), *and Horwitz v. Alloy Automotive Co.*, 957 F.2d 1431, 1435–36 (7th Cir.1992) (refusing jurisdiction because record showed that the district court and parties had schemed to create jurisdiction over essentially interlocutory appeal), *with United States v. Kaufmann*, 985 F.2d 884, 890 (7th Cir.1993) ("*Horwitz* did not announce a principle that dismissal of some claims without prejudice deprives a judgment on the merits of all other claims of finality for purposes of appeal."), *and Division 241 Amalgamated Transit Union v. Suscy*, 538 F.2d 1264, 1266 & n. 1 (7th Cir.1976) (exercising jurisdiction even though one claim was voluntarily dismissed without prejudice), *and Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533 (9th Cir.1984) (holding that jurisdiction exists because the district court entered final judgment even though some claims were voluntarily dismissed without prejudice).

8. *See Fassett v. Delta Kappa Epsilon (N. Y.)*, 807 F.2d 1150, 1155 (3d Cir.1986).

### B. Ryan *is also bad policy.*

But abstract legal analysis is not the end of the inquiry. Policy matters, too, in sculpting the final judgment rule. The definition of "final decision" is flexible: we should construe it "pragmatic[ally]" to secure the " 'just, speedy, and inexpensive determination of every action.' " *Brown Shoe Co. v. United States,* 370 U.S. 294, 306, 82 S.Ct. 1502, 1513, 8 L.Ed.2d 510 (1962) (quoting Fed.R.Civ.P. 1). " '[The final decision rule] emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of trial.... In addition, the rule is in accordance with the sensible policy of "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." ' " *Van Cauwenberghe v. Biard,* 486 U.S. 517, 521 n. 3, 108 S.Ct. 1945, 1949 n. 3, 100 L.Ed.2d 517 (1988) (quoting *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981) (in turn quoting *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940))). *Ryan*'s rule does not serve the interests of just resolution of claims, respect for the busy district courts, or judicial efficiency.

Why *Ryan*'s rule is a bad idea depends on whether the district court has relinquished jurisdiction in these cases. That question is debatable. On one hand, the game is over in the district court. All the claims are gone, and the clerk has entered judgment; for these reasons, the Tenth Circuit has concluded that in these cases the district court has lost jurisdiction. *See Cook v. Rocky Mountain Bank Note Co.,* 974 F.2d 147, 148 (10th Cir.1992). On the other hand, if the judgment is not final, jurisdiction must remain in the district court if it exists anywhere. This is what the second appeal in *Mesa* implies. *See Mesa v. United States,* 123 F.3d 1435, 1437 n. 3 (11th Cir.1997). But for present purposes, it does not matter whether the district court has lost jurisdiction; bad results follow either way.

#### 1. Ryan *may permanently deny appeal.*

First, if we conclude that the district court has lost jurisdiction, *Ryan*'s rule is draconian. For the crime of what we presume to be crafting premature appellate jurisdiction, the litigant is *forever* denied the appeal by right that § 1291 bestows. Once the district court has relinquished jurisdiction, the litigant has no sure way of obtaining finality that would permit review of the district court's order in this action. If the litigant begins a new action with the voluntarily dismissed claims, and that second action proceeds to judgment, the litigant of course cannot raise issues from the first action on appeal in the second action. The Federal Rules of Civil Procedure, moreover, do not provide any explicit mechanism for "undismissing," after judgment, any voluntarily dismissed claims so that the litigant could ultimately appeal.[9]

#### 2. *Or* Ryan *may inhibit finality for other purposes.*

If, on the other hand, we assume that the district court retains jurisdiction, the litigant

9. Arguably, Fed.R.Civ.P. 60(b) may provide such relief. A stumbling block, however, in cases such as this one where the parties stipulated to the voluntary dismissal, is that a Rule 41(a)(1)(ii) stipulated dismissal need not be by order of the court. The rules do not provide any mechanism for the court to reconsider the parties' stipulation (as opposed to its own orders), so it is questionable whether one litigant could unilaterally obtain a final judgment even after the case is reopened under Rule 60(b). *Cf. McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 935 (11th Cir.1987) (district court without authority to dismiss claim with prejudice when parties have already stipulated the dismissal of the claim without prejudice).

Part of the conceptual difficulty here and elsewhere may arise from the fact that Rule 41 is not meant for the use the parties in this case and others like it have put it: the Rule speaks of voluntary dismissal of "an action," not a claim. Fed.R.Civ.P. 41(a)(1). Most likely, the proper way to drop a *claim* without prejudice is to amend the complaint under Rule 15(a). *See, e.g. Gobbo Farms & Orchards v. Poole Chem. Co.,* 81 F.3d 122, 123 (10th Cir.1996); *Exxon Corp. v. Maryland Cas. Co.,* 599 F.2d 659, 662 (5th Cir. 1979). (One could speculate whether, under *Ryan,* this court lacks jurisdiction over actions in which the complaint was amended to drop some claims that the plaintiff could later assert in another action.)

may have an avenue of appeal: he could seek entry of judgment under Fed.R.Civ.P. 54(b). But entry of judgment under Rule 54(b), unlike an appeal from a final judgment, is not a matter of right. It is, rather, committed to the district court's discretion, with the caution that cases appropriate for Rule 54(b) judgment are rare. *See Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 166 (11th Cir.1997).

Even if the litigant obtains an appeal, the Rule 54(b) route comes at a cost to finality. That is because, notwithstanding even an affirmance on appeal, the case is still pending below. Maybe there are ways to get rid of such an ever-pending case. When the voluntary dismissal without prejudice is by court order, the court could revisit the order and dismiss with prejudice. *See Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir.1995) (district court may reconsider and amend interlocutory orders at any time before final judgment). When the dismissal is by stipulation, however, the court lacks authority to dismiss the action with prejudice. *See McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 935 (11th Cir.1987). Perhaps the parties could stipulate to "undismiss"—the Rules provide no such explicit right—but if the parties cannot agree, the action sits indefinitely on the district court's docket. And in a case such as this one where real estate is involved, the title to that real estate could be forever clouded because litigation affecting the title remains pending in the district court. Furthermore, neither claim preclusion nor issue preclusion would bar a second action asserting the dismissed claims, since the action would have no final judgment. *See Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1225 (11th Cir.1998) (claim preclusion); *J.R. Clearwater, Inc. v. Ashland Chem. Co.*, 93 F.3d 176, 179 (5th Cir.1996) (issue preclusion). That means that the litigant could sue again and generate a future appeal.

3. Ryan *encourages pointless district-court litigation.*

Of course there is one way that litigants could preserve an appeal by right, and avoid

landing in *Ryan* limbo: pursue all claims to disposition on the merits. But forcing parties to do so imposes more work on the district courts and promotes inefficiency. This is because *Ryan* ignores the legitimate reasons that a litigant may opt for a voluntary dismissal without prejudice over further proceedings or a dismissal with prejudice. Most obviously, the demise of some claims may have "orphaned" the rest.[10] For example, the remaining claim may share an element with the resolved claims; a conclusion that no evidence exists to support the common element may sound the tocsin on the remaining claim. Or perhaps the remaining claim was a setoff or a "defensive counterclaim," one that the defendant would not have bothered to bring had the plaintiff not picked a fight. Or maybe the claim (like some RICO claims) was not a winner on the merits, but offered other tactical advantages (such as wide-ranging discovery or a chance to blacken the opponent).

In each case, it makes no sense to pursue the claim further now, but if the disposition of the resolved claims is reversed or vacated on appeal, the remaining claim's usefulness or merit may rise again. The opponent of the orphaned claim could seek an impeccably final decision by moving the district court for summary judgment or dismissal. But it unnecessarily foists work on the busy district court and disserves judicial economy to force a party to pursue a now-pointless claim against his will.

4. *But what about piecemeal appeals?*

Against all these disadvantages in *Ryan*'s rule, there is an arguable countervailing concern. That is the specter of repeated appeals by litigants who dismiss claims in order to appeal and then resurrect them on remand or in another action. This concern does not justify *Ryan*'s rule; there are already built-in deterrents to this kind of conduct.

Voluntary dismissal without prejudice is not, after all, a freebie from the litigant's

---

**10.** As explained above, this case presents a good example: Barry's counterclaim for breach of fiduciary duty was explicitly based on the State Treasurer's exercise of the right for which he

sought specific performance in Count I. Once the court concluded that the State Treasurer had no right to exercise in the future, then Berry would never have suffered any breach of fiduciary duty.

point of view. When the litigant refiles the claims, he could face meritorious statute-of-limitations arguments. *See, e.g., Fassett v. Delta Kappa Epsilon (N.Y.),* 807 F.2d 1150, 1155 (3d Cir.1986). Delay is inevitable, moreover, and in that delay memories may fade, documents may disappear, and witnesses may die or scatter. Refiling entails as well the expenses and hassles of an entirely new action, from (re)discovery to summary judgment motions. In short, it is hard to imagine that litigants would routinely dismiss meritorious claims without prejudice simply to obtain an appeal on other claims.

5. Ryan *is an overbroad deterrent to jurisdictional manipulation.*

Even if *Ryan*'s rule were needed to address the concern of manipulative refiling, it sweeps too broadly. *Ryan*'s logic does not bar jurisdiction only over appeals by cunning litigants. Because *Ryan*'s rule rests on the conclusion that a voluntary dismissal without prejudice is not final, it bars jurisdiction in the following scenario, as well: A plaintiff wishes to avoid the possibility of appeal, should she prevail in the lawsuit. To her one arguably meritorious claim, therefore, she attaches a second claim that she knows to be meritless. At some time before the defendant answers, she dismisses the second claim without prejudice, as she may do by right under Fed.R.Civ.P. 41(a)(1)(i). Now if she prevails on her first claim, the defendant cannot appeal because any judgment would not be final. Under *Ryan,* this strategy would work. Whatever the wisdom of punishing crafty litigants, it is hard to justify punishing their victims.

6. Ryan *is sound in one respect: clarity.*

While *Ryan* generally runs against final-judgment-rule policy, it does serve judicial efficiency in one respect: it provides a bright-line rule. The Seventh and Ninth Circuits' practice of combing the record for evidence of manipulative intent and the Third Circuit's analysis of future potential affirmative defenses (such as the statute of limitations) waste resources better spent on the merits of appeals. Jurisdiction is a threshold matter. *See Brown Shoe Co. v. United States,* 370 U.S. 294, 305–06, 82 S.Ct. 1502, 1513, 8 L.Ed.2d 510 (1962). A bright-line rule is therefore preferable to determine whether jurisdiction exists or not. *See Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 202, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988) ("This practical approach to the matter [of finality] suggests that what is of importance here is ... preservation of operational consistency and predictability in the overall application of § 1291."). This circuit's bright-line rule fosters predictability and streamlines review. But the bright line is drawn in the wrong place; dismissals without prejudice should be considered a proper component of a final decision under *Jetco.*

IV. *Conclusion*

For the foregoing reasons, this court should rethink en banc the issue this case and *Ryan* present. We must especially keep in mind, in interpreting § 1291, that it confers appeal *by right. See Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 874, 114 S.Ct. 1992, 1999, 128 L.Ed.2d 842 (1994). The State Treasurer is entitled to review of the district court's construction of the partnership agreement, and in the current state of the law the Treasurer may never get such review. There is no substitute for appeal by right, and depriving the Treasurer of it for *Ryan*'s reasons is unjustifiable.