United States Court of Appeals,

Eleventh Circuit.

Nos. 96-3749, 98-2259.

Kevin TWIGG, individually and on behalf of all others similarly situated, Plaintiff-Appellant,

v.

SEARS, ROEBUCK & CO., Defendant-Appellee.

Sept. 4, 1998.

Appeal from the United States District Court for the Middle District of Florida. (No. 95-1261-CIV-T-24(A), Susan C. Bucklew, Judge.

Before TJOFLAT, COX and HULL, Circuit Judges.

COX, Circuit Judge:

Kevin Twigg appeals the district court's grant of summary judgment in favor of Sears, Roebuck & Company on the ground that Twigg's claims were precluded by a judgment in an earlier class action against Sears. We reverse and remand.

## I. FACTS AND PROCEDURAL HISTORY

A. *Twigg's Suit*

Twigg filed a complaint in the Middle District of Florida that asserts claims arising out of his purchase of four new tires from a Sears automotive center in Sarasota, Florida on September 26, 1991. The complaint alleges that Twigg had Sears install the new tires on his car and purchased, on Sears's recommendation, the "AccuBalance" service, in which a machine "test[s] a rim-mounted tire and, if the testing indicates it is necessary, the machine shaves rubber from parts of the tire thereby making the tire/rim unit round." (R.1-11 at ¶ 12.) Twigg alleges that Sears did not perform the AccuBalance service on his tires, and that Sears in fact performed the service less than 50% of the time that it was sold to customers. Twigg filed the instant action as a class action, defining the

class as "all Sears customers who paid Sears for the AccuBalance service with new tires purchased during the period of May 1989 and [sic] June 1994." (R.1-11 at ¶ 55.) He asserts three claims: federal civil RICO, common-law fraud, and conversion.

Sears moved to dismiss the action, asserting: (1) that Twigg did not allege a sufficient injury to support standing; (2) that Twigg did not allege an injury sufficient to pass Florida's "economic loss" rule; (3) that Twigg failed to state a claim for a RICO violation or for conversion; and (4) that the settlement, release, and final judgment in a 1992 consumer class action against Sears barred Twigg's claims. In his opposition to the motion, Twigg contested Sears's arguments, and argued additionally that notice in the earlier action was insufficient to apprise him as to his rights, and therefore to bar his suit would deny him due process. (*See* R.5-111 at 17-19 (opposition to motion for summary judgment).) The district court dismissed Twigg's conversion claim for failure to state a claim, but concluded that he alleged an injury sufficient both to support standing and to pass the economic loss rule, and that he sufficiently pleaded a civil RICO claim. As for Sears's argument that Twigg's claims were precluded by the judgment and release in the prior class action, the district court converted that portion of Sears's 12(b)(6) motion into a motion for summary judgment, granting limited discovery on the issue of claim preclusion.

B. *The 1992 National Class Action*

Before discussing the district court's resolution of the claim preclusion issue, it is useful to set out the underlying facts of the prior class action. In 1992 the California Department of Consumer Affairs, Bureau of Auto Repair ("BAR") released the results of an eighteen-month investigation into the practices of Sears Tire and Auto Centers. BAR concluded in the report that Sears Tire and Auto Centers habitually overcharged customers for auto repairs, recommended

2

unnecessary repairs, and charged for repairs that were never in fact completed. The heavily publicized results of BAR's investigation prompted the filing of a number of class actions against Sears both in California and in other states, alleging various consumer fraud and deceptive trade practice claims. These cases ultimately were consolidated into a single class action (the "1992 National Class Action") in the United States District Court for the Northern District of California styled *In re Sears Automotive Center Consumer Litigation,* No. C-92-2227-RHS. The suit focused on Sears's compensation policy, which based employees' compensation on the number of auto services they completed within a given period and set quotas for certain high-profit-margin automotive repairs. The complaint alleged that the commission-and-quota compensation system encouraged Sears personnel to recommend and perform unnecessary services, to perform services in a hasty, slipshod manner, or to charge for services that were never in fact performed. (*See* R.1-16 Ex. 2-A (Second Amended Class Complaint—1992 National Class Action).)

The parties reached a settlement, and in September 1992 the district court provisionally certified a mandatory settlement class under FED. R. CIV. P. 23(b)(1) and 23(b)(2) and appointed settlement class representatives and counsel. The court also granted preliminary approval of the proposed settlement pending a final settlement approval hearing, and approved dissemination of a Notice of Proposed Settlement by publication in newspapers nationwide. The district court held a final settlement approval hearing, and in October 1992 entered an order finally certifying the class as an "opt-out" class under FED.R.CIV.P. 23(b)(3) and approving a settlement in the action.

The settlement provided compensatory relief in the form of $50 coupons issued by Sears to class members who purchased and had installed at a Sears Auto Center a pair of brake calipers, a pair of coil springs, a pair of shock absorbers, a master cylinder, or an idler arm. (*See* R.1-16, Ex.

3

3-A, Settlement Agreement at 9-10.)  The settlement also contractually obligated Sears, pursuant to its "Satisfaction Guaranteed or Your Money Back" policy, to "review any complaints or concerns that any customer presents to it that unnecessary service was performed, or that services were incorrectly performed, by a Sears Auto Center," and to "take corrective action for members of the Plaintiff Settlement Class consistent with the policy" if appropriate.  (*Id.* at 8-9.)  Sears also agreed to "re-communicate to all service employees in its Auto Centers its firm policy" that none of its employees should recommend unnecessary auto repairs.  (*Id.* at 7.)  Class counsel received $3,000,000 in fees and costs, plus interest.  (*See id.* at 16-17.)

The parties formulated a plan of distribution by which a final notice of settlement,[1] including a proviso that settlement class members could opt out of the settlement if they wished, would be published nationwide in major newspapers and posted in Sears stores.  The district court approved the parties' plan.

C. *The District Court's Ruling on Sears's Motion for Summary Judgment*

In determining whether the 1992 National Class Action barred Twigg's claims, the district court started from the well-established proposition that there are four elements to claim preclusion: (1) a final judgment on the merits;  (2) rendered by a court of competent jurisdiction;  (3) identity of parties;  and (4) identity of causes of action.  *See, e.g., Kemp v. Birmingham News Co.,* 608 F.2d 1049, 1052 (5th Cir.1979).  The parties did not dispute that a court of competent jurisdiction had rendered a final judgment in the 1992 National Class Action, which left only identity of parties and identity of causes of action to be adjudicated.  With respect to identity of parties, the central point

---

[1]Both the preliminary and final notices are included in their entirety as appendices to this opinion.

4

of contention was the meaning of "automobile repairs" as used in the Northern District of California's order defining the class as "persons or entities who purchased any automobile repairs (including both the parts and the labor) from any Sears Auto Center from June 10, 1988 through September 2, 1992." (R.1-16, Ex. 3-A at 3.) Twigg argued that the AccuBalance service does not constitute "automobile repairs," and thus he was not a member of the class in the 1992 action. The district court observed that the settlement agreement was governed by California law, and turned to a California regulatory statute defining "repair of motor vehicles." Based on its reading of that statute, the district court concluded that the AccuBalance service constitutes "automobile repairs," and that Twigg was a class member in the earlier action.

In determining whether the causes of action were identical, the district court turned to our decision in *Manning v. City of Auburn,* 953 F.2d 1355 (11th Cir.1992), which held that a "determination of whether the causes of action in two proceedings are the same is governed by whether the primary right and duty are the same," and that claim preclusion applies "not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." *Id.* at 1358 (quotations omitted). In support of its contention that Twigg's claims arose out of the same operative nucleus of fact, Sears pointed to two items: (1) the complaint in the 1992 National Class Action, which alleged, *inter alia,* that Sears charged for services that were never performed; and (2) the BAR investigation, which included the investigation of tire services and precipitated the 1992 National Class Action. The district court, finding these contentions persuasive, concluded that Twigg's claims arose from the same operative nucleus of fact as the claims in the 1992 National Class Action for purposes of claim preclusion. Having found the elements of claim preclusion to be present, the district court granted Sears's

5

motion for summary judgment on claim preclusion grounds; the court did not explicitly address Twigg's due process arguments. Twigg appeals.

After the summary judgment ruling, Sears entered into an agreement to settle a suit brought by the Attorney General of Florida concerning Sears's nonperformance of AccuBalance services in Florida between 1989 and 1993. Twigg learned of this settlement, and filed a Rule 60(b) motion for relief from judgment on the ground of newly discovered evidence, arguing that Sears's settlement of claims for the nonperformance of AccuBalance services from 1989 to 1993 constituted newly discovered evidence that the 1992 National Class Action did not encompass AccuBalance services. The district court denied this motion on the ground that the 1997 settlement could not be newly discovered evidence sufficient to justify modification of the judgment under FED.R.CIV.P. 60(b), as it was not in existence at the time of the summary judgment order. Twigg appeals this ruling as well; the appeal was consolidated with his appeal of the summary judgment order, and the two are now before us.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo. See Hale v. Tallapoosa County,* 50 F.3d 1579, 1581 (11th Cir.1995).

## III. CONTENTIONS OF THE PARTIES

The parties present numerous issues on appeal, but we will discuss only the issues pertaining to claim preclusion.[2] Twigg contends that he is not a member of the settlement class and that his

---

[2]The parties raise numerous other issues on appeal. Twigg argues: (1) that the district court erred in concluding that no material issues of fact remained as to the issue of claim preclusion; (2) that the district court erred in allowing Sears to raise certain issues and file additional materials in its reply to Twigg's opposition to the motion for summary judgment; (3) that the district court erroneously refused to allow Twigg to conduct additional discovery after Sears

6

claims are not identical to those raised in the 1992 National Class Action, and therefore that the earlier action cannot bar his suit.[3] Furthermore, he contends, even if claim preclusion were applicable, barring his claims would deny him due process because: (1) he did not receive notice of the 1992 National Class Action; and (2) even if he had, the published notices to class members were insufficient to notify him that AccuBalance claims like his were included in the 1992 action. Sears argues that Twigg was a member of the settlement class, that claims like Twigg's were litigated in the prior action, and that his claim therefore should be barred. Additionally, Sears contends that both the content of the notices and the manner in which notices were given were fully consistent with due process.

## IV. DISCUSSION

Generally, principles of res judicata, or claim preclusion, apply to judgments in class actions as in other cases. *See Kemp v. Birmingham News Co.,* 608 F.2d 1049, 1054 (5th Cir.1979). Yet class actions, as other cases, are subject to the requirements of due process: "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be

---

filed its reply to Twigg's opposition to the motion for summary judgment; (4) that the district court lacked jurisdiction because the Northern District of California had reserved jurisdiction over the 1992 National Class Action for the purposes of administering the settlement agreement; and (5) that the district court erred in concluding that Sears's 1997 settlement of AccuBalance claims with the Florida Attorney General was not newly discovered evidence meriting relief under Rule 60(b). Sears advances the arguments it raised in support of its motion to dismiss as alternative grounds on which to affirm the district court and additionally argues that even if the judgment in the 1992 National Class Action does not preclude Twigg's suit, it is precluded by the release executed in that action. These arguments do not warrant discussion. *See* 11TH CIR. R. 36-1.

[3]The district court did not certify Twigg's proposed class, and therefore we address the issues in this case only as they pertain to Twigg's individual claims.

preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656-57, 94 L.Ed. 865 (1950). Before the bar of claim preclusion may be applied to the claim of an absent class member, it must be demonstrated that invocation of the bar is consistent with due process, *see, e.g., Johnson v. General Motors Corp.,* 598 F.2d 432, 435, 437 (5th Cir.1979), and an absent class member may collaterally attack the prior judgment on the ground that to apply claim preclusion would deny him due process, *see, e.g., Silber v. Mahon,* 957 F.2d 697, 699-700 (9th Cir.1992); *Gonzales v. Cassidy,* 474 F.2d 67, 74-75 (5th Cir.1973); *see generally* Note, *Collateral Attack on the Binding Effect of Class Action Judgments,* 87 HARV. L.REV. 589 (1974). Sears does not contend that Twigg participated in the 1992 National Class Action or had any source of information to inform him as to whether claims like his were litigated in that action except for the published and posted notices. Thus, in determining whether notice of the 1992 National Class Action was sufficient to afford the process due, we look solely to the language of the notices and the manner of their distribution. *Cf. Bogard v. Cook,* 586 F.2d 399, 408-09 (5th Cir.1978) (even though prisoner was putative member of prior class action seeking injunctive and declaratory relief, court looked to notice to determine whether prisoner was properly informed that claims for monetary damages could have been raised in prior litigation); *King v. South Cent. Bell Tel. & Tel. Co.,* 790 F.2d 524, 527 (6th Cir.1986) (notice of proposed settlement was ambiguous and plaintiff was uncertain as to full scope of prior class action, but plaintiff received individual notice by mail and filed objection to proposed settlement; under circumstances, plaintiff had sufficient notice to satisfy due process, and subsequent suit was precluded by judgment in earlier class action).

Twigg first argues that barring his suit would violate principles of due process because he never received notice of the 1992 National Class Action. Due process requires that "[t]he means employed [to give notice] ... be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane,* 339 U.S. at 315, 70 S.Ct. at 657. The Northern District of California authorized notice by nationwide publication and posted notice in Sears stores. Although this manner of notice may not satisfy the requirements of either due process[4] or FED.R.CIV.P. 23,[5] we need not decide this issue, as we conclude that even if Twigg had received the notices, their language was insufficient to notify him that claims like his were being litigated in the action.

The law of this circuit sets forth in some detail what the notice in a class action suit should contain:

> The essence of due process is that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case....

---

[4]The record reveals that Twigg filled out a work order listing his name, address, and telephone number when he brought his car to Sears. (*See* R.1-1, Ex. B.) Sears supplied a number of similar work orders in an exhibit in support of its summary judgment motion. (*See* R.1-16, Group Ex. B *passim* (complaints to BAR by people who brought their cars to Sears, including work orders with names and addresses).) Given the seeming ready availability of the names and addresses of absent class members, the notices in the 1992 action may have been insufficient under *Mullane. See Schroeder v. City of New York,* 371 U.S. 208, 212-13, 83 S.Ct. 279, 282 (1962) (citing *Mullane,* 339 U.S. at 318, 70 S.Ct. at 659).

[5]*See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (proposed class in a 23(b)(3) class action included over 6,000,000 individuals, 2,250,000 of whose names and addresses were available from stock records; because some class members were readily identifiable through reasonable effort, the express language of Rule 23 precluded notice by publication only); *see also In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1098-99 (5th Cir.1977) (manual search for identifiable class members through 1,700,000 cards listing names and addresses of purchasers of new motor vehicles, while expensive and time-consuming, is within range of "reasonable effort" under *Eisen* ).

To satisfy this principle, it is not only necessary that the notice reach the parties affected but that it convey the required information....

....

... Surely the best notice practicable under the circumstances cannot stop with ... generalities. It must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member....

Absentee class members will generally have had no knowledge of the suit until they receive the initial class notice. This will be their primary, if not exclusive, source of information for deciding how to exercise their rights under [R]ule 23.... Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action.

*In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1103-05 (5th Cir.1977) (quotations and citations omitted); *see also Bogard,* 586 F.2d at 408-09 (plaintiff's claims for money damages not precluded by judgment in prior class action awarding injunctive and declaratory relief when class notice did not alert him to possibility that he could seek individual money damages).

The preliminary notice (attached hereto as Appendix A) is directed to "[a]ll persons or entities who, during the period from June 10, 1988 to September 2, 1992, inclusive, purchased automotive repair services (including parts and/or labor) from any Sears, Roebuck & Co. Auto Center." App. A.[6] As the parties' briefs demonstrate, the meaning of the term "automotive repair services" and the question of whether that term encompasses AccuBalance is susceptible to debate. Assuming *arguendo* that Twigg is a person who purchased "automotive repair services," the notices still needed to inform him as to whether claims like his were litigated in the 1992 action. (Both the preliminary notice and the final notice attached hereto as Appendix B), however, describe the

---

[6]The preliminary and final notices here are materially similar in their description of the action.

gravamen of the 1992 National Class Action in a lone sentence. In the preliminary notice, the gravamen of the action is described as follows: "The *Consolidated Amended Complaint* filed in the action alleges that Sears and other defendants violated federal and state laws by allegedly making *unnecessary and/or improper repairs* to its customers' automobiles." App. A (emphasis added). The final notice describes the gravamen of the action as follows: "In their consolidated complaint, plaintiffs alleged that Sears and other defendants violated federal and state laws by making *unnecessary and/or improper repairs* to its customers' automobiles." App. B (emphasis added). Twigg does not contend that the AccuBalance service he paid for was either unnecessary or improperly performed. The claims described in the notices arose out of services that, although "unnecessary" or "improper," were actually rendered by Sears. The notices do not alert a reader that the prior action included claims by Sears customers based upon being billed for services that Sears never performed. The claims involved in the 1992 National Class Action apparently included claims of this kind, but the notices do not say so.

Twigg also contends that the settlement described in the final notice does not provide relief to people with claims like his, therefore making it less likely that anyone with an AccuBalance claim reading the notice would come to the conclusion that it was applicable to him. We agree. The description of the settlement included in the final notice includes only one provision that could arguably afford compensatory relief to an AccuBalance claimant like Twigg. It states that Sears "contractually obligated itself to all members of the Settlement Class to take appropriate action consistent with its "Satisfaction Guaranteed or Your Money Bank' policy." App. B. Given our conclusion that the claims described in the notices do not include claims based upon being billed for services that Sears never performed, the average person would not understand Sears's contractual

11

undertaking relative to its "Satisfaction Guaranteed" policy as affording compensatory relief to an AccuBalance claimant like Twigg.[7]

Viewed as a whole, the notices do not adequately inform an absent class member like Twigg either that claims like his were being litigated or that they had been settled. We need not decide whether the district court correctly determined that Twigg was a person who purchased "automotive repair services" or that his claims arose from the same operative nucleus of fact as the 1992 National Class Action. Even if the elements of claim preclusion are present, deficiencies in the notices preclude our allowing the judgment in the prior action to bar Twigg's claims because invocation of the bar would not be consistent with due process.

## V. CONCLUSION

For the reasons cited above, we REVERSE the district court's grant of summary judgment in favor of Sears, and REMAND the case to the district court.

---

[7]While the actual terms of the settlement agreement on file in the 1992 National Class Action are not relevant to the due process analysis, we do not read the settlement agreement to provide any compensatory relief to people with claims like Twigg's. The $50 coupons are available only to class members who had certain services (not including AccuBalance) performed. (*See* R.1-16, Ex. 3-A, Settlement Agreement at 9-10.) Sears points out that the settlement agreement obligates Sears to "re-communicate to all service employees in its Auto Centers its firm policy" that none of its employees should recommend unnecessary auto repairs. (*Id.* at 7.) While this may qualify as some broad form of injunctive relief, this promise to instruct Sears employees to refrain from future wrongdoing affords no compensatory relief to those people who have already incurred damages due to Sears's misconduct.

Finally, Sears argues that people in Twigg's position are covered by the provision of the settlement agreement under which Sears contractually obligates itself to class members to take action consistent with its "Satisfaction Guaranteed or Your Money Back" policy. While the paragraph in question purports to apply to "each member of the Settlement Class," its also expressly limits Sears's actions to "review[ing] any complaints or concerns that any customer presents to [Sears] that *unnecessary service was performed, or that services were incorrectly performed,* by a Sears Auto Center." (*Id.* at 9 (emphasis added).)

REVERSED AND REMANDED.

APPENDIX A

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re: SEARS AUTOMOTIVE CENTER CONSUMER LITIGATION

This Document Relates To:

ALL CASES.

No. C-92-2227-RHS

CLASS ACTION

NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT AND SETTLEMENT HEARING

TO: ALL PERSONS OR ENTITIES WHO, DURING THE PERIOD FROM JUNE 10, 1988 TO SEPTEMBER 2, 1992 INCLUSIVE, PURCHASES AUTOMOTIVE REPAIR SERVICES (INCLUDING PARTS AND/OR LABOR) FROM ANY SEARS, ROEBUCK & COMPANY, INC. AUTO CENTER

The purpose of this Notice is to advise you that:

1. Your rights may be affected by the above-captioned lawsuit which is pending in this Court.

2. A proposed settlement has been reached with the defendants.

3. By Order dated September 11, 1992, the Honorable Robert H. Schnacke, Judge of the United States District Court for the Northern District of California (the "Court"), has conditionally certified a class (the "Settlement Class") for purposes of settlement, and has determined that the proposed settlement described in this Notice bears consideration as to whether it should be approved as fair, reasonable and adequate resolution of the class claims. The plaintiff Settlement Class is defined as follows:

13

All persons or entities who purchased any automobile repairs (including both the parts and labor) from any Sears Auto Center from June 10, 1998 through September 2, 1998.

The Settlement Class has been certified on a mandatory (non-"opt-out") basis under the provisions of Federal Rule of Civil Procedure 23(b)(1) and (b)(2). Members of the class may comment, provided they comply with the deadline established by the Court, as described below, on the proposed class or the proposed terms of settlement prior to the Court determining whether to issue an approval order finally approving the settlement. If the settlement and class determination is finally approved by the Court, all Settlement Class members will be bound by all orders and judgments of the Court affecting the Class.

4. A hearing on whether the proposed settlement should be finally approved will be held on October 16, 1992 at 10:00 a.m., in the Courtroom of the Honorable Robert H. Schnacke, located at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California.

*Description Of The Class Action And Court Proceedings*

5. On June 12, 1992, several individual and representative plaintiffs, on behalf of themselves and all others similarly situated, commenced civil actions against Sears Roebuck & Co., and several individual defendants. Ultimately, 14 civil actions were consolidated in *In re Sears Automotive Center Consumer Litigation,* No. C-92-2227-RHS (N.D.Cal.) (the "Action"). The *Consolidated Amended Complaint* filed in the Action alleging that Sears and other defendants violated federal and state laws by allegedly making unnecessary and/or improper repairs to its customers' automobiles. The Action sought injunctive relief, restitution and damages against defendants on behalf of those persons or entities who, from and after June 10, 1988 purchased automotive repairs from any Sears Roebuck & Company Auto Center. The claims asserted on behalf of the class, and the factual allegations made in connection with these claims, are fully set forth in the *Second Amended*

14

*Consolidated Class Action Complaint* which may be obtained upon written request to the Class Counsel listed in Paragraph 10 of this Notice.

6. The defendants have denied and continue to deny each and every claim and contention asserted in the Action. Defendants have repeatedly asserted and continue to assert many defenses and have expressly denied any wrongdoing or legal liability arising out of the conduct alleged in the Action.

7. As a result of discussions among the parties, an agreement has been reached to resolve the Action in the manner described in this Notice.

*Terms Of The Settlement*

8. Under the terms of the settlement, Sears has contractually obligated itself to all members of the Settlement Class to take appropriate action consistent with its "Satisfaction Guaranteed Or Your Money Back" policy. Only a store manager will be permitted to determine that corrective action is not appropriate. Sears has also agreed to establish an office, or to expand the duties of an existing office within Sears, the responsibility of which is to assist customers who are dissatisfied with the Sears store manager's response to any such consumer complaint. Sears shall provide an "800" number to contact that office. Sears has also agreed to equitable relief which will eliminate the programs and practices that allegedly led to the violations complained of by plaintiffs. Sears has also agreed to pay to counsel for plaintiffs, at no cost to the Class Members, attorneys' fees and costs, in an agreed upon amount, subject to Court approval.

9. In addition, under the terms of the settlement, Sears will issue coupons in the amount of $50.00 to persons who, during the period from August 1, 1990, to January 31, 1992, inclusive, purchased from and had installed by Sears any of the following: a pair of brake calipers, a pair of

15

coil springs, a pair of shock absorbers, a brake master cylinder or idler arm. Multiple purchase-installations of these components will entitle the consumer to multiple certificates. Applications for the coupons will be available at Sears Auto Centers and by mail. The coupons will be valid for one year (from November 1, 1992 to October 31, 1993) and will be redeemable at any Sears store for any merchandise sold by Sears.

10. Any comments/objections regarding the Settlement must be in writing and received no later than October 12, 1992. To be considered, such written comments/objections must be mailed to each of the following:

Clerk of the Court
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

*Copies to: Plaintiffs' Counsel*

William Bernstein, Esq. Lieff, Cabraser & Heimann 275 Battery Street 30th Floor San Francisco, CA 94111 Facsimile: (415) 956-1008

William S. Lerach, Esq. Milberg Weiss Bershad Specthrie & Lerach 600 West Broadway, Suite 1800 San Diego, CA 92101 Facsimile: (619) 231-7423

CA(98)4414-1,SIZE-26 PICAS,TYPE-PDI

CA(98)4414-2,SIZE-49 PICAS,TYPE-PDI

CA(98)4414-2,SIZE-49 PICAS,TYPE-PDI

16