Walter H. ADAMS, et al., Plaintiff,

v.

SOUTHERN FARM BUREAU LIFE
INSURANCE COMPANY,
Defendant.

No. 4:98–CV–20(CDL).

United States District Court,
M.D. Georgia,
Columbus Division.

March 3, 2006.

Charles Neal Pope, Samuel W. Oates, Jr., Wade H. Tomlinson, III, Karen M. Earley, Columbus, GA, F. Lee Bowie, Mitchell H. Tyner, Jackson, MS, James L. Wiggins, Eastman, GA, Christopher Casper, John R. Newcomer, W. Christian Hoyer, Tampa, FL, DeWitte Thompson, Duluth, GA, Elizabeth Joan Cabraser, Jonathan M. Watkins, Morris A. Ratner, San Francisco, CA, Allen Austin Vollor, Brandon, MS, David A. Busby, Langston & Langston, PLLC, Jackson, MS, for Plaintiff.

Franklin G. Burt, James F. Jorden, Landon Clayman, Markham R. Leventhal, Miami, FL, Gregory S. Ellington, James

E. Humes, II, Jeffrey A. Brown, Columbus, GA, for Defendant.

## ORDER ON SOUTHERN FARM BUREAU'S MOTION TO ENFORCE FINAL JUDGMENT

LAND, District Judge.

The Court presently has pending before it the Motion to Enforce Final Judgment (Doc. 132) ("Motion to Enforce") filed on December 20, 2005 by Southern Farm Bureau Life Insurance Company ("Southern Farm"). In its Motion, Southern Farm seeks to enjoin nine current and former Mississippi policyholders ("Mississippi Class Members") from prosecuting the following two lawsuits filed in Mississippi state court:

(1) *Harmon Jourdan, et al. vs. Southern Farm Bureau Life Insurance Company, et al.*, Case No. 251–05–932–CIV (Hinds County Circuit Court, Mississippi), *after removal*, Case No. 3:05cv775WHB-AGN (S.D.Miss.) (the "*Jourdan* action"); and

(2) *Wilson Craig, et al. vs. Southern Farm Bureau Life Insurance Company, et al.*, Case No. CV–05–360–PFM (Monroe County Circuit Court, Mississippi) (the "*Craig* action").

The *Jourdan* and *Craig* actions are referred to herein collectively as the "Mississippi Actions."

The nine Mississippi Class Members were members of the class action settlement approved by this Court in its Final Order and Judgment entered on August 25, 1999 ("Final Judgment").[1] None of the Mississippi Class Members opted out of the class action settlement. Southern Farm argues that the claims which the Mississippi Class Members are now attempting to assert in the Mississippi Actions are barred by the release and enjoined by the permanent injunction contained in the Court's Final Judgment. For the reasons set forth below, this Court agrees that the Mississippi Actions are barred and grants the Motion to Enforce.

## BACKGROUND

### A. The Class Action Lawsuit

On January 21, 1998, Walter H. Adams filed a class action lawsuit in this Court against Southern Farm alleging claims for breach of fiduciary duty, fraud, negligence, breach of contract, and breach of the duty of good faith and fair dealing, all in connection with the marketing and sales of flexible premium and universal life ("UL") insurance policies by Southern Farm and its agents. The class action complaint ("Complaint") alleged further that beginning in 1984 Southern Farm and its agents engaged in "unlawful and fraudulent sales practices," designed to convince existing policyholders to "roll-over" their existing life insurance policies to less suitable flexible premium UL insurance policies. *See* Complaint at Preliminary Statement. The "Plaintiff Class [ ] asserted, or would have asserted, that in 1984 [Southern Farm] began inducing owners of whole life insurance policies to replace their whole life policies with flexible premium policies without adequately informing the policyholders that, by converting, they could lose cash value, would pay new commission charges, and, if they lived beyond a certain age, would be required to pay higher premiums in order to maintain the death ben-

---

1. The nine "Mississippi Class Members" are Wilson Craig, Elizabeth Craig, Harmon Jourdan, Ronnie Carlisle, Kimberly Carlisle, Cecile Barnett, William Hathcock, David Lyons, and Roy Hodges. Southern Farm withdrew its Motion to Enforce with respect to Donnie Smith, a plaintiff in the *Jourdan* action. Accordingly, this Court does not address Donnie Smith.

efits provided by the new policies." Findings of Fact and Conclusions of Law ¶ 8, at 7–8. Among other things, the Complaint alleged that Southern Farm marketed the UL policies as "level premium" policies and misrepresented or omitted "an adequate description of the relationship between and among 'cash value', 'cost of insurance' and 'premium.' " Complaint ¶¶ 8, 14. Southern Farm allegedly used illustrations "based on unreasonable expectations concerning interest rates," and failed to explain "the consequences of less favorable performances." *Id.* ¶ 8. As a result, Plaintiff Adams alleged that he and other policyholders were damaged by, among other things, loss of cash value, loss of insurance coverage and benefits, and increased premiums. *Id.*

### B. The Class Action Settlement

Southern Farm contested the action, and the parties litigated the matter for more than a year, engaging in discovery and motion practice, and eventually entering into a Stipulation of Settlement dated March 24, 1999. *See* Final Judgment at Exhibit 1. The proposed settlement was evaluated by Judge Elliott of this Court, and a comprehensive notice plan was approved. A detailed class notice (the "Class Notice") describing the Settlement was sent to "each reasonably identifiable Class Member by first-class mail, postage prepaid, at the Class Member's last known address." Stipulation of Settlement at 25. This Class Notice was mailed on May 7, 1999 to 174,343 individually identified class members, including the Mississippi Class

Members. *See* Affidavit of David Winborne at ¶ 8 (hereinafter "Winborne Aff."). Summary Notices were also posted on Southern Farm's internet website and published in *USA Today.* Stipulation of Settlement at 16, 26, 28.[2]

### C. Class Notice

The Class Notice provided to the Mississippi Class Members informed them of their membership in the Class, and described the action and the claims being released. The Class Notice stated:

You are receiving this information because, according to our records, you are a member of the Class of current and former flexible premium or universal life insurance policyowners eligible to participate in the proposed settlement. The lawsuit against SFBL, which started in 1998, involves claims about how flexible premium and universal life insurance policies have been sold and how those policies have performed.

Class Notice at 1; *id.* at 5 ("According to our records, you are a Class Member"); *id.* at 15 ("YOUR RIGHTS WILL BE AFFECTED BY THE LEGAL PROCEEDINGS DESCRIBED BELOW.").

The Class Notice also informed Class Members that the *Adams* Complaint alleged they were misled and harmed when they replaced an existing Southern Farm policy with a new, UL policy. *See, e.g.,* Class Notice at 6 (explaining that the lawsuit alleged that Southern Farm replaced existing policies with "a flexible premium, universal life insurance policy which did

---

2. The approved notice plan in this case called for individual notice to be mailed to identifiable class members in two stages. The first Class Notice explained the action, the proposed settlement, and the options of Class Members to remain in the class or exclude themselves. A second, post-settlement notice was subsequently mailed to Class Members who did not opt out. The post-settlement notice included election forms for General and Special Adjudication relief. Any mailed notices returned as undeliverable at least 40 days before this Court conducted its Fairness Hearing were re-mailed, using the services of an address research firm. Findings of Fact and Conclusions of Law ¶ 23, at 19–20 and ¶ 16, at 40–41. Pursuant to the notice plan, Southern Farm also established a toll-free telephone number for Class Members to call with questions. Winborne Aff. at ¶ 11.

not perform as represented"); Class Notice at 8 ("Plaintiff has alleged that Class Members were all misled and therefore harmed by SFBL."). Section 3 of the Class Notice described the *Adams* lawsuit as alleging that Southern Farm "made misrepresentations or omissions of fact in connection with the sale of flexible premium and universal life insurance policies in Replacement Transactions," including, among other things:

- "misleading policyholders to believe that only a single or fixed, limited number of out-of-pocket premium payments would be required to keep a policy in force, and that the promised death benefits and increasing or stable cash values would continue to exist, without the policyowner making any further out-of-pocket premium payments;"
- "misleading policyowners to believe that interest rates illustrated at the time the policies were sold to Class Members were reasonable, that such rates were not likely to change, or would not change in an amount sufficient to cause the policies to perform differently than was represented at the time of sale."

Class Notice at 21.

The Class Notice provided for two types of relief available to policyholders in the class action settlement—General Relief and Special Adjudication Relief. *See generally*, Class Notice, Section 4, at 24–35. Class Members who elected General Relief were entitled to receive a "premium credit" toward the purchase of "any new SFBL life insurance or Annuity product within a period of 12 months after the settlement bec[ame] final." Class Notice at 27. Pursuant to an amendment to the Stipulation of Settlement, Class Members with in-force UL policies who elected General Relief also received a 2% enhancement to the net death benefit of their UL policy for 18 months. *See* Amendment to Stipulation of Settlement (the "Amendment"; dated August 17, 1999).

Class Members were entitled to elect and pursue Special Adjudication Relief if they believed that their Southern Farm agent had made misrepresentations "during consultations regarding insurance" about, among other things, "the operation, and performance" of their policy, "the manner in which the number, amount, and frequency of premium payments would affect the cash value" of their policy and the "amount and duration of insurance," and the "ability to keep or not to keep" the policy in force "based on a fixed number and amount of premium payments." Class Notice at 30–31. Special Adjudication Relief could include enhancements to the cash value of the Class Member's existing life insurance policy. Class Notice at 33.

Section 5 of the Class Notice, entitled "Dismissal and Release of Claims," explained that under the settlement, "Class Members who remain in the Class will release [Southern Farm], its affiliates and others (including the Company's insurance agents and brokers) from liability for known and unknown claims relating to the Policies affected by the Settlement." The Release to be included in the Final Judgment was included verbatim in the Class Notice as Appendix A. Class Notice at 44–48. The Class Notice informed Class Members that the Release was "critical" and advised them to read it as follows:

**The Release that will apply to Class Members is a critical element of the proposed settlement. Thus, it has been reprinted verbatim in Appendix A to this Notice. You should read it very carefully because it will affect your rights if you remain a class member.**

Class Notice at 35 (bold font in original). The Release was drafted broadly and covered any and all claims "that have been, could have been, may be, or could be al-

leged or asserted now or in the future by Plaintiff or any Class Member against the Releasees[3] ... on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions."[4]

In addition to the broad general release language, the Release contained more specific release provisions covering, among other things, all claims related to:

- "the number of out-of-pocket payments that were paid or would need to be paid for any life insurance policy or the Policies." Class Notice at 45.
- "the ability to keep or not to keep the Policy or Policies in force based on a fixed number and/or amount of premium payments...." Class Notice at 45.
- "the interest rate credited or to be credited ..." Class Notice at 46.
- "the nature, characteristics, terms ... and operation of the Policy or the Policies." *Id.*
- "the relationship between the Policy's or Policies' cash value or cash surrender value and the cumulative amount, number, and/or frequency of premiums paid." *Id.*
- "the Replacement of an existing life insurance policy with a new life insurance policy." *Id.*

The Class Notice also informed Class Members of their right to object to the settlement and to "opt out" or exclude themselves from the class action settlement. Class Notice at 20. The Class Notice provided instructions to Class Members who wished to opt out and warned that non-excluded class members would be "bound" by the settlement and "precluded from filing or continuing to prosecute any lawsuit or other proceeding

in any jurisdiction" based on or relating to the claims and causes of action released in the settlement. Class Notice, Section 6, at 36–38.

### D. Fairness Hearing and Final Approval of Settlement

On August 20, 1999, a Fairness Hearing was conducted, and witnesses, experts and objectors were heard. The settlement was approved and the Final Judgment entered on August 25, 1999. In connection with the Final Judgment, the Court entered detailed Findings of Fact and Conclusions of Law, in which the Court found that the relief provided by the settlement was a "fair, swift and cost effective alternative to litigation" (Findings ¶ 19, p. 15); that the settlement provided "an elaborate program to inform Class Members of this proceeding and the Relief available to them" (Findings ¶ 23, p. 19); that the settlement offered "significant value" to the class (Findings ¶ 24, p. 20); that the approved form of Class Notice was in fact provided as required by the notice plan (Findings ¶ 26, pp. 21–22); that counsel for the parties had "negotiated modifications and enhancements to the Stipulation of Settlement" in response to objections (Findings ¶ 30, p. 50); and that the settlement was fair, reasonable, and adequate (Findings ¶ 41, p. 58). The Final Judgment resolved and released all claims that were raised in or could have been raised in the *Adams* Complaint, including the claims now raised in the Mississippi Actions.

### E. The Final Judgment and Permanent Injunction

In the Final Judgment, the Court memorialized certain of its findings including the following:

the "consulting, marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, performance, retention, administration and/or replacement" of the Southern Farm policies. Class Notice at 44.

---

3. "Releasees" was defined broadly to include, among other parties, Southern Farm and all of its agents. Class Notice at 44.

4. Class Notice at 45. The term "Released Transactions" included, among other things,

The terms and provisions of the Stipulation of Settlement, including all exhibits thereto, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the parties and the Class Members.

\*　　\*　　\*　　\*　　\*　　\*

The plaintiff, as representative of the Class, and Lead Counsel have adequately represented the Class for purposes of entering into and implementing the settlement.

Final Judgment ¶¶ 3, 6.

The Court finds that the *distribution of the Class Notice and the publication of the Summary Notice,* as provided for in the Hearing Order of March 24, 1999, (i) constituted the best practicable notice under the circumstances to Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprize Class Members of the pendency of the action, their right to object or to exclude themselves from the proposed settlement, and their right to appear at the Fairness Hearing, (iii) was reasonable and *constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice,* and (iv) fully complied with the requirements of the United States Constitution and the Rules of the Court.

Final Judgment ¶ 4 (emphasis added). The Court also found that the Post–Settlement Notice was adequate, stating in pertinent part:

The Court finds that these [Post–Settlement] notice materials and the notice methodology set forth in the Stipulation of Settlement (i) constitute the most effective and practicable notice of the Final Order and Judgment, the relief available to Class Members pursuant to the Final Order and Judgment, and applicable time periods, (ii) *constitute due, adequate, and sufficient notice for all other purposes to all Class Members,* and (iii) fully comply with the requirements of the United States Constitution and the Rules of the Court.

*Id.* ¶ 5 (emphasis added).

The Final Judgment entered by this Court included the broad Release described above, and it released both existing and future claims related to Class Members' Southern Farm life insurance policies, as follows:

In connection with this Release, Plaintiff and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of Plaintiff and the Class Members in executing this Release fully, finally and forever to settle and release all such matters and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action).

\*　　\*　　\*　　\*　　\*　　\*

Plaintiff and the Class Members hereby agree and acknowledge that the provisions of this Release together constitute an essential term of the Settlement Agreement.

Final Judgment ¶¶ 8(B)(iii), (v). This same language was contained in the Class Notice. Class Notice at 48.

The Court in the Final Judgment held that the "terms of the Stipulation of Settlement and of this Final Order and Judgment, including all exhibits thereto, shall be forever binding on, and shall have *res judicata* and preclusive effect in all pending and future lawsuits maintained by the plaintiff and all other Class Members." Final Judgment ¶ 7. To protect its judg-

ment, the Court expressly *enjoined* all non-excluded Class Members "from filing, commencing, prosecuting ... or participating in ... any lawsuit in any jurisdiction based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this action, and/or the Released Transactions ...." Final Judgment ¶ 10. Further, the Court expressly retained jurisdiction to enforce the settlement and the Final Judgment.

> The Court has personal jurisdiction over the parties and the Class Members .... Without in any way affecting the finality of this Final Order and Judgment, this Court hereby retains jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Stipulation of Settlement and of this Final Order and Judgment, and for any other necessary purpose.

Final Judgment ¶ 14.

### F. The Mississippi Actions

On or about September 26, 2005, the Mississippi Class Members involved in this motion filed two substantially similar lawsuits in Mississippi state court (defined above as the "*Craig* action" and the "*Jourdan* action"). The complaints in these Mississippi Actions contain claims arising out of the same UL policies and Replacement Transactions that were the subject of the class action settlement approved by this Court in 1999. The Mississippi Actions allege, *inter alia,* that the Mississippi Class Members were fraudulently induced to "convert" existing Southern Farm life insurance policies and purchase Southern Farm universal life policies. *See Craig* Compl. ¶ 54; *Jourdan* Compl. ¶¶ 78–84.[5] The Mississippi Actions allege that Southern Farm engaged in a nationwide "scheme" in which it "sold tens of thousands of 'universal life' insurance policies in Mississippi and elsewhere throughout the United States." *Craig* Compl. ¶ 22; *Jourdan* Compl. ¶ 33. The Mississippi Actions complain: that Southern Farm fraudulently induced the Mississippi Class Members to purchase their universal life insurance policies by misrepresenting the policies as "level" premium policies, *Craig* Compl. ¶¶ 15–16, 26; *Jourdan* Compl. ¶¶ 26–27, 37; that Southern Farm "concealed" that premiums would increase in the future, *Craig* Compl. ¶ 34; *Jourdan* Compl. ¶ 45; that the policies failed to explain the "true meaning of cash value," *Craig* Compl. ¶ 17; *Jourdan* Compl. ¶ 28; that the interest rate assumptions were "unrealistic," *Craig* Compl. ¶ 27; *Jourdan* Compl. ¶ 40; that Southern Farm used "misleading illustrations," *Craig* Compl. ¶¶ 40–41; *Jourdan* Compl. ¶¶ 51–52; and that the Mississippi Class Members had been fraudulently induced to replace their existing policies with UL policies. *Craig* Compl. ¶ 54; *Jourdan* Compl. ¶¶ 78–83.

On December 20, 2005, Southern Farm filed its Motion to Enforce with this Court. Southern Farm argues that the Mississippi Actions violate this Court's Final Judgment by asserting claims, on behalf of Class Members who did not opt out of the class action settlement, that are covered, released and enjoined by the Final Judgment, including many of the exact same claims raised by plaintiff Walter H. Adams in the Complaint in this case.

In response, the Mississippi Class Members contend that their lawsuits allege "increasing premium" claims that were not adequately described in the Class Notice. The Mississippi Class Members argue that it would violate their Due Process rights if they were not allowed to pursue these

---

**5.** Copies of the complaints in the *Craig* and *Jourdan* actions were filed as Exhibits C and D, respectively, to Southern Farm's Memorandum of Law in support of the Motion to Enforce.

increasing premium claims. Three of the Mississippi Class Members also alleged in their response to the motion that they "do not believe" they received the Class Notice. The other six Mississippi Class Members do not dispute that they received the Class Notice. Finally, the Mississippi Class Members argue that their claims are "post-settlement" claims that should not be barred by the Final Judgment.

## DISCUSSION

The Mississippi Class Members make two principal arguments to support their contention that this Court should not enjoin their prosecution of the Mississippi Actions. First, the Mississippi Class Members contend that Class Notice in this case was inadequate and failed to satisfy Due Process. Second, the Mississippi Class Members contend that their "increasing premium" claims are not released by the class action settlement because they relate to post-settlement conduct. For the reasons set forth below, the Court rejects these arguments and grants the Motion to Enforce.

### A. The Class Notice Satisfied Due Process

Due process requires that class notice must be "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). This Court previously found that the Class Notice in this action met this standard. *See* Final Judgment at 4 (Class Notice "fully complied with the requirements of the United States Constitution and the Rules of the Court").

 The Mississippi Actions which are the subject of the Motion to Enforce are covered by the Class Notice. These Mississippi Actions assert claims that arise out of and relate to UL policies sold in the same replacement transactions addressed by the class settlement. The Class Notice describes the same types of claims that are alleged in the Mississippi Actions, including claims regarding the "amount" of premium payments to be made in the future in order to keep the policies in force. Section 3 of the Class Notice describes the lawsuit as, *inter alia*, alleging that Southern Farm "made misrepresentations" in the "sale of flexible premium and universal life policies," by "misleading policyholders to believe that only a single or fixed, limited number of out-of-pocket premium payments would be required to keep a policy in force." Class Notice at 21. If they were not satisfied with the relief offered under the settlement, the Mississippi Class Members had the opportunity to opt out. It is undisputed that none of the Mississippi Class Members opted out of the settlement.[6]

---

6. Three of the nine Mississippi Class Members—Ronnie Carlisle, Kimberly Carlisle, and Harmon Jourdan—contend in their brief that they "do not believe they received the *Adams* class action notice." Southern Farm has presented unrebutted evidence, however, that the Class Notice was mailed to each of the nine Mississippi Class Members, that the Class Notices were not returned, and that two of the three—Ronnie and Kimberly Carlisle—actually received the Class Notice. Winborne Aff. ¶¶ 9–14. This Court finds that all of the Mississippi Class Members received the Class Notice and that the notice plan in this case,

which included distribution of class notice by first class mail to all reasonably identifiable class members, satisfied due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (due process satisfied where individual notice is mailed to "all class members whose names and addresses may be ascertained through reasonable effort"). The analysis for purposes of due process is on the notice plan itself, and actual receipt of notice by each individual class member is not required. *Dusenbery v. United States*, 534 U.S. 161, 171,

The Mississippi Class Members rely heavily on *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222 (11th Cir.1998), to support their contention that the Class Notice did not adequately inform them that their claims were covered. *Twigg* is clearly distinguishable. In *Twigg*, the plaintiff filed suit, claiming that he was billed for automotive services that Sears never performed. Sears contended that the plaintiff's claims were barred by a previous settlement. The Eleventh Circuit focused its analysis upon whether the language in the class action settlement notices was sufficient to notify the plaintiff that claims like his were being litigated in that action. *Id.* at 1227. The notices described, in a "lone sentence" the action as including claims arising because Sears made *"unnecessary and/or improper* repairs to its customers' automobiles." *Id.* at 1228 (emphasis in original). However, the plaintiff's claim was for services billed but not performed, and the Eleventh Circuit concluded that the notices did not "alert a reader that the prior action included claims by Sears customers based upon being billed for services that Sears never performed." *Id.* The Eleventh Circuit further found that the average person would not understand the notices as affording compensatory relief to a person with claims like the plaintiff's. *Id.* For these reasons, the Eleventh Circuit concluded that the notices did not "adequately inform an absent class member like [the plaintiff] either that claims like his were being litigated or that they had been settled." *Id.*

Unlike *Twigg*, the Release in this case was actually attached to and made a part of the Class Notice. The Class Notice further advised the Mississippi Class Members that the Release was attached because it was "a *critical* element of the proposed settlement." Class Notice at 35

("You should read it very carefully because *it will affect your rights if you remain in the Class.*") (emphasis added). In sharp contrast to the notice considered inadequate by the Eleventh Circuit in *Twigg*, the 48–page Class Notice in this case satisfied due process because the Notice: (a) directly informed recipients, including the Mississippi Class Members, that they were Class Members in the *Adams* settlement; (b) described their potential claims, including claims relating to increased premiums; (c) advised that these claims were being litigated in the class action and that recipients would have to opt out to preserve those claims in the future; (d) included the form of the Release that would appear in the Final Judgment; and (e) advised recipients they would be enjoined from bringing any claims in the future. In light of these factors and the detailed Class Notice in this case, this Court agrees that the Class Notice was adequate, and that the facts in the *Twigg* case are distinguishable from this case.

### B. *"Post–Settlement" Claims*

█ The Mississippi Class Members contend that their claims for "increasing premiums" were not released in the class action settlement because their premiums did not actually increase until after the settlement, or have not yet increased. The Court finds that the increasing premium claims alleged by the Mississippi Class Members were adequately described in the Class Notice, and were included and released in the Final Judgment. All of the allegedly tortious conduct giving rise to those claims, including claims of misrepresentations and omissions regarding the sale, terms, operation, and future performance of the policies, occurred prior to the class action settlement, at or about the time the UL policies were purchased in replacement transactions by the Mississip-

122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[O]ur cases have never required actual no-

tice" to satisfy due process requirements) (citations omitted).

pi Class Members.[7] Indeed, the Court notes that counsel for the Mississippi Class Members conceded at oral argument that, with one limited exception explained below, all of the claims alleged in the Mississippi Actions arise out of alleged fraud or misrepresentations made when the policies were purchased. Given the broad Release, there is no possibility that any claims for fraud or other tortious conduct related to the sale, terms, or operation of the policies could survive the Final Judgment in this case, and the Court finds that all such claims are barred by *res judicata* and are permanently enjoined under the Final Judgment.

Plaintiffs Wilson and Elizabeth Craig argue that they have a separate claim for the cancellation of their policy, which allegedly occurred outside of the Class Period and is unrelated to the sale or purchase of their policy or their original replacement transaction. The Craigs argue that their claim for improper cancellation of their policy should not be barred because it is based on the agent's conduct in not remitting their premium payment to Southern Farm in a timely manner in 2002. The Court finds that this isolated claim (the "2002 Craig Claim"), whether it is characterized as negligence or breach of contract, would not be barred by the Final Judgment, provided it is based entirely on conduct and injury which occurred after the Final Judgment and does not require presentation of any evidence relating to conduct occurring prior to entry of the Final Judgment.

## CONCLUSION

For the foregoing reasons, the Court grants the Motion to Enforce. The Court finds that the Class Notice complied with Due Process and that the Mississippi Actions are covered by the Release and the terms of the Final Judgment. All of the other arguments of the Mississippi Class Members are without merit. Under the Court's authority to protect and enforce its Final Judgment, the Court hereby enjoins the nine Mississippi Class Members (Wilson Craig, Elizabeth Craig, Harmon Jour-

---

**7.** The Mississippi Class Members assert that their "increasing premium" claims are "future injury" claims that did not accrue until after the Final Judgment was entered. These claims, they contend, are analogous to the claims of the "exposure only" plaintiffs in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In *Amchem*, the class consisted of persons who had been exposed to asbestos, as well as family members of those who had been so exposed. The class included both "presently injured" claimants and "exposure-only" claimants, whose injuries had not manifested at the time of the action. The Supreme Court affirmed the Third Circuit's decision to vacate the class certification, finding that the class did not "satisfy the requirements of common issue predominance and adequacy of representation" because the interests of the "present injury" claimants differed from those of the "exposure-only" claimants. *Id.* at 628, 117 S.Ct. 2231. Part of this discrepancy was that the "exposure-only" claimants did not, at the time of the action, know whether they had been harmed by asbestos exposure. Here, however, the "increasing premium" claims asserted by the Mississippi Class Members arise out of alleged fraud or misrepresentations made when the policies were purchased. If the Mississippi Class Members' argument were accepted, it would mean that the class action settlement did not cover any claims for future damages even though those damages arose from the alleged fraud that occurred prior to the settlement and even though the release and notice clearly notified the class members that they were releasing such claims. The key distinction here is that at the time of the settlement the class members were on notice that they had been defrauded, that they had been damaged by the fraud, that these damages included past and future damages, that if they were not satisfied with the settlement, they could opt out of it, and that if they did not opt out, they were releasing claims for past and future damages. The Mississippi Class Members did not exercise their opt out rights and are bound by the settlement.

dan, Ronnie Carlisle, Kimberly Carlisle, Cecile Barnett, William Hathcock, David Lyons, and Roy Hodges) from prosecuting the Mississippi Actions; and the Court holds that all of their claims in the Mississippi Actions are barred by *res judicata*, except for the 2002 Craig Claim to the extent that claim may be proven solely through evidence of post-settlement conduct. Should the Mississippi Class Members desire to seek appellate review of this Order, to the extent that this Order is not otherwise a final order, pursuant to 28 U.S.C. § 1292(b), this Court finds that this Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."